John Wesley, Appellee, v. Chicago, St. Paul & Kansas City Railway Company, Appellant.

1. **Railroads:** NEGLIGENCE: EVIDENCE. While the plaintiff was in the act of crossing the defendant's railway with a team and wagon he was struck by a train and injured, his horses killed and his wagon destroyed. When within one hundred fifty or two hundred feet of the crossing he looked for the train, and again when within forty or fifty feet thereof he slackened the speed of his team and again looked and listened, but could neither see nor hear the train. The defendant's track crossed the highway at the point in question at an acute angle, and the view of the railway in the direction from which the train approached was obstructed by weeds, bushes and trees which had been permitted to grow between the highway and the track. The evidence tended to show that the train was running at a high rate of speed as it approached the crossing, and no bell was rung, nor whistle blown, until too late to warn the plaintiff of its approach. *Held*, that the evidence warranted a verdict for the plaintiff for damages for the injuries sustained.

2. **Practice:** MISCONDUCT OF JURY: NEW TRIAL. While the jury was deliberating on their verdict one of the jurors was ill, but was able to participate in the active consideration of the case, and after the general verdict was agreed upon he was, with the consent of the defendant, treated by a physician. *Held*, that the defendant was not on such account entitled to a new trial.

3. **Personal Injury:** DAMAGES: VERDICT. A verdict of three thousand dollars in such case is not excessive, where, besides the injury to the plaintiff's property, the evidence tended to show that the plaintiff's injuries were of a permanent character, and seriously impaired his ability to perform the manual labor to which he was accustomed before the accident.

*Appeal from Delaware District Court.*—Hon. D. J. Likehan, Judge.

Saturday, January 30, 1892.

ACTION to recover damages for injuries alleged to have been caused by negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment in favor of the plaintiff. The defendant appeals.—*Affirmed.*

*Fouke & Lyon* and *Lusk & Bunn,* for appellant.

*Blair, Dunham & Norris,* for appellee.

ROBINSON, C. J.—In September, 1888, the defendant operated a railway in Delaware and Buchanan counties. At a point in the county last named, a short distance west of the Delaware county line, the railway crossed a highway at a place known as the "Sliter Crossing." The general direction of the highway in the vicinity of the crossing was from east to west. The railway east of the crossing was south of the highway, and approached it on a line which curved northward, its direction at the crossing being north of west. The angle made by the railway with the highway from the crossing eastward was acute, and a wagon on the highway fifty feet east of the center of the crossing would be but twelve or fifteen feet from the rails. On the first day of the month named, the plaintiff approached the crossing from the east for the purpose of going to a point southwest of Lamont to put up hay. He was driving a team of horses attached to a wagon, on which there was a hay-rack, and was sitting on the rack in such a manner that his face was turned to the northwest. His team went onto the crossing, but, before he could get beyond it, the wagon and horses were struck by the engine of a passenger train of the defendant which approached from the east. One of the horses was killed, the other seriously hurt, the wagon and hay-rack were destroyed, and personal injuries were inflicted upon the plaintiff. He seeks to recover compensation for the injuries he there received and the loss of his property. The defendant is alleged

to have been negligent in permitting its track to cross the highway at too acute an angle; in not constructing approaches of sufficient width; in having deep ditches at the sides of the approaches; and in running its train too rapidly, and approaching the crossing without proper signals at the time of the accident.    The defendant denies the alleged negligence, and avers that the accident was due to negligence on the part of the plaintiff.

I. The plaintiff testified, in effect, that he was driving slowly as he approached the crossing; that, when he was from one hundred fifty to two hundred feet distant from it, he looked for the train, but did not see it; that, when he was within forty or fifty feet of the track, at the foot of the approach, he slackened the speed of his team, and again looked back and listened, but could neither see nor hear the train; and that he then attempted to cross, driving his team so as to go over the rails at as great an angle as possible to prevent the wheels from sliding on the rails, and that while he was so engaged the accident occurred.    He further testified that no bell was rung nor whistle blown, and that his view of the railway over which the train approached was obstructed by weeds, bushes and trees which had been permitted to grow and remain upon the ground between the highway and the railroad track.    The testimony of the plaintiff as to the nature of the crossing, the obstructions to sight, and the failure of the defendant to give any signal of the approach of the train, is corroborated by that of several witnesses, who appear to be credible, and to have been fully informed as to the facts.    There is also testimony which tends to show that the train was being run at an unreasonably high rate of speed,—some witnesses placing it at sixty miles an hour.    This testimony is contradicted in the most direct manner possible by numerous witnesses, whose opportunities for knowing the facts

1. RAILROADS: negligence: evidence.

were as good as were those of the witnesses for the
plaintiff.    Evidence tending to impeach some of these
witnesses was given; but other witnesses for the defend-
ant were, so far as we are able to judge, worthy of
credit.    Under these circumstances it was the province
of the jury to determine the very truth of the matters in
dispute, and we are not authorized to disturb their find-
ings.

It is said that the plaintiff on a former trial of the
same case gave testimony which contradicts some of
that which he gave on the last trial; but, if that be
conceded, his testimony which it is claimed is contra-
dicted by what he said on the first trial is corroborated
by that of the disinterested witnesses.    It was the duty
of the jury to consider the variance in the testimony of
the plaintiff, and give it proper weight, and we must
presume that they did so.

It is said that the evidence shows without contra-
diction that the plaintiff could have seen the approach-
ing train in time to have avoided the danger by the
use of reasonable care.    That is true, if the defendant's
theory as to the distance the plaintiff could have seen
the train before he commenced the ascent of the
approach is true; but we think the jury were authorized
to find that the plaintiff exercised due care in listening
and looking for the train, and that there were, at the
time of the accident, obstructions, consisting of tall
weeds, bushes and trees, which prevented him from
seeing it; also, that the train approached the crossing
at an unusually high rate of speed, without a signal of
any kind until it was too late to warn the plaintiff of his
danger in time for him to avoid it.    The fact that the
train was running at a more rapid rate of speed than
usual was not necessarily proof of negligence on the
part of the defendant, but was proper for the jury to
consider, in connection with the acts of the plaintiff,
to ascertain if he used due care to avoid danger.
Whether the plaintiff was negligent in not stopping his

team before driving onto the track was a question properly submitted to the jury for determination. *Reed v. Chicago, St. P., M. & O. Ry. Co.*, 74 Iowa, 194; *Nosler v. Chicago, B. & Q. Ry. Co.*, 73 Iowa, 273; *Lee v. Chicago, R. I. & P. Ry. Co.*, 80 Iowa, 173.

II. Numerous questions are suggested rather than argued by counsel, and need not be noticed at length.

2. PRACTICE: misconduct of jury: new trial.

The charge of the court was full, and, so far as criticised, fair to the defendant. It is said the case was not properly considered by the jury, for the reason that several of the jurors were ill when they were deliberating upon their verdict, and one of them was treated by a physician. But it is shown that the physician was called after the general verdict was agreed upon, and prescribed for the juror with the consent of the defendant, and that all the jurors were able to participate in the active consideration of the case.

The verdict of the jury was in favor of the plaintiff for the sum of four thousand dollars. The court required him to accept a judgment for three thous-

3. PERSONAL injury: damages: verdict.

and dollars or submit to a new trial. It is said that the amount of recovery is excessive. The value of the property injured and destroyed could have constituted but a small part of the amount allowed by the jury. The testimony as to the injuries received by the plaintiff was conflicting; the experts who were called as witnesses differing widely in their opinions. Some of the evidence tended to show that the injuries were of a permanent character, and that they seriously impaired the ability of the plaintiff to perform the manual labor to which he was accustomed before the accident. We cannot say that the amount of recovery fixed by the court is excessive.

A careful examination of the entire record fails to disclose any sufficient ground upon which to reverse the judgment of the district court. It is therefore AFFIRMED.