## O'Toole, Appellant, v. Pittsburgh & Lake Erie R. R.

### [Marked to be reported.]

*Negligence—Railroad—Grade crossings—Passenger in street car.*

Where a train of cars on a steam railroad collides with a street car at a grade crossing, and a passenger in the street car is injured, both companies are answerable to the passenger, if they were both negligent, and the passenger may maintain his suit against either. If the collision was the result wholly of the negligence of the street car company, the railroad company is not liable.

A passenger in a street car approaching a grade crossing of a railroad is under no obligation to look out and listen for approaching locomotives, and to jump off the car in apprehension of a possible collision. Crescent Township v. Anderson, 114 Pa. 643; Dean v. Pa. R. R., 129 Pa. 514, distinguished.

Plaintiff, a shoemaker by trade, and a cripple from birth in both feet, took a seat in a street car. When the car came to a point about seventy-five feet from the crossing a locomotive approached; the watchman lowered the gates, the street car stopped, the locomotive crossed, the watchman raised the gates, the car started, and as it reached the railroad track was struck by another locomotive following the one that had passed. Plaintiff was thrown out and injured. The court charged that if plaintiff by looking up the railroad could have learned whether an engine was or was not approaching, and could at the time have gotten off the car if he discovered an engine approaching, and did not do so, he would be guilty of contributory negligence and could not recover. *Held* to be error.

Argued Oct. 12, 1893. Appeal, No. 129, Oct. T., 1893, by plaintiff, Michael O'Toole, from judgment of C. P. Lawrence Co., Sept. T., 1892, No. 19, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for personal injuries. Before MARTIN, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

"Did Michael O'Toole contribute in any way to the injury that he received that morning? Being upon the car of the street railway company he would not be required to exercise the care that the law lays down as the rule with a person going along a highway coming to a railroad crossing,—he must stop and look and listen. There could be no reason for that rule

under the circumstances in this particular case. A person in a street railway car going along the highway cannot know where a railroad crosses the line of the street railway. And if they did know where the railroad and the railway cross it would be impossible for them to stop and look and listen to comply with the rule that binds all other persons in going along public highways. They have no control of the carriage in which they are riding; they cannot control its movements; they cannot stop and look and listen unless at the will of the carrier company. So that that rule becomes meaningless when you apply it to passengers in a railway car, and it should not be applied to the plaintiff in this case. . . .

" [If Michael O'Toole upon that street car could have seen the engine, and did not undertake to see it, or did not exercise reasonable care for the purpose of ascertaining whether they could proceed across the street railway track in safety, then he would be guilty of contributory negligence. And that, I say to you, would be the rule applicable to him, for the reason that it is in evidence that he knew well the point at which this railway crosses the Pittsburgh & Lake Erie Railroad. And he has testified that he had gone backward and forward quite frequently as a passenger on the line of the street railway company, and that he knew the point at which they crossed the line of the Lake Erie Railroad. He tells you further he was looking at the safety gates that morning, that he was watching them. If he was looking at the safety gates that morning he knew where the railroad was. If he knew the point at which the safety gates were erected, he knew the purpose for which they were erected. If he looked at those safety gates for the purpose of ascertaining whether they could proceed safely across the line of the Pittsburgh & Lake Erie Railroad, then he could at the same time and with the same effort have looked up the track of the railroad to see whether or not an engine was approaching. And if at the time the car in which he was traveling stopped, it stopped at such a place that he could have looked up the railroad, and if by looking up the railroad at that time he could have learned whether this engine was or was not approaching, and could at that time have gotten off the car if he discovered an engine approaching, and did not do that, then he would be guilty of contributory negligence and could not re-

cover in this case.] [5] Whether he could have done that or could not have done that is a question for you. And the point where the street car stopped is a question for you to determine from the evidence. If in considering this case, under all the testimony that has been offered, you conclude that Michael O'Toole in any way contributed to the accident—if his conduct in any way contributed to the receiving of the injury which he did receive, then he is guilty of contributory negligence. And a person who is guilty of contributory negligence in any degree cannot recover in a proceeding of this kind. If you conclude that he was guilty of contributing in any way to this accident, then you must find a verdict for the defendant. . . .

" These safety gates are erected for the protection of the traveling public. [But the fact that the safety gates are erected does not affect in any way the responsibility or the liability of the railroad company in the operation of its railroad or in the management of its trains. These safety gates are erected, and it is customary to have them lowered when a train is passing, in order that the public may have notice that a train is about to pass, and when the train has passed the gates are raised. Persons going along a public street or along a public road where there are safety gates have still incumbent upon them the duty imposed by law to stop and look and listen—to exercise ordinary care for their own safety and to ascertain by stopping and by looking and listening whether a train be approaching.

" Even if the safety gates are not lowered, that does not relieve the person passing along the road from the obligation imposed upon him by the law to stop and look and listen for a train. He still has that obligation upon him; it is the duty, where there is an ordinance requiring safety gates, and safety gates have been erected, for the company to lower these gates at the approach of a train. If they fail to lower these gates they become liable to the penalty imposed by the ordinance, if there be such a penalty imposed. The failure to lower the safety gates does not of itself make the company negligent, so far as this case is concerned. The question of whether they were or were not lowered before this train came to the crossing is a question of fact for you. There is considerable testimony offered on that point and the testimony is conflicting, and it is for you to reconcile, if you can, and if you cannot reconcile it,

then it is a question for you from the evidence in the case to conclude whether the safety gates were or were not lowered; and you come then to the credibility of the witnesses on that point. It is a question for you to say whom you will believe and whom you will not believe. But if you conclude that the gates were not lowered, that fact, of itself, is not sufficient to warrant you in finding a verdict for the plaintiff. Had the plaintiff been walking along the street, the fact that the gates were not lowered would not be an invitation to him to cross the railroad in violation of the rule of law, that he shall stop and look and listen when approaching a railroad crossing. And that rule is not taken away because the plaintiff happened to be in a street car at the time." ]. [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (5, 6) instructions, quoting them.

*Oscar L. Jackson,* for appellant.—In parts of the charge the court laid down rules for the conduct of a passenger in a public conveyance operated by a common carrier, that certainly cannot be sustained by either authority or principle. If there be any such rules applicable to the passengers on public electric street cars, they must be applicable to all kinds of public conveyances, steam railroads as well as others, for electric street cars are operated in all our cities at as great a rate of speed as steam roads are allowed to be within built-up parts of the cities, and steam roads cross each other's tracks very frequently. But for what purpose shall a passenger be on the lookout? He has no control of the car or its movements. His attempting to meddle with it could only be to work confusion and endanger the safety of all. On the other hand, is it the rule that a passenger's safety, be he man, woman or child, must depend on looking out, and deciding when and where he or she must move from a moving car, and the court below in this case says he must do this on the peril of being charged, if he neglects it and is injured by the negligence of others, with contributory negligence that will prevent recovery of damages.

Ever since the cases of Dean v. R. R., 129 Pa. 514, and Bunting v. Hogsett, 139 Pa. 363, it has been the law that when an individual is injured by the concurrent and contributory

negligence of two parties, one of whom at the time is the common carrier of his person, both tort-feasors are liable to him jointly and severally, and that the negligence of his common carrier cannot be imputed to him.

*D. B. Kurtz, L. T. Kurtz* with him, for appellee.—Negligence is want of ordinary care under the circumstances: Pa. R. R. v. Coon, 111 Pa. 430. Negligence is always a question for the jury, where there is any doubt as to the facts or the inference to be drawn from them: Pa. R. R. v. Barnett, 59 Pa. 259.

Where the danger is known to the passenger of a common carrier, and he can avoid it, and does not, though not subject to imputed negligence of the carrier, he is guilty of personal or individual negligence in not avoiding the danger: Dean v. Pa. R. R., 129 Pa. 514; Crescent Twp. v. Anderson, 114 Pa. 643.

Where particular instructions on a given point are not asked for, the case will be reviewed upon the general effect of the charge, and not upon sentences or paragraphs selected from it. If as a whole the charge was calculated to mislead, there is error in the record; if not, there is none: Lehigh Val. R. R. v. Brandtmaier, 113 Pa. 610; Pa. R. R. v. Coon, 111 Pa. 430; Com. v. Zappe, 153 Pa. 498; Reese v. Reese, 90 Pa. 89; Smith v. Meldren, 107 Pa. 348; Horton v. Coal Co., 2 Penny. 26.

The burden of proof in an action of negligence rests upon the party charging it: Sh. & Red., Neg. § 11; Reese v. Clark, 146 Pa. 465; Pawling v. Hoskins, 132 Pa. 617; Phila. & Read. R. R. v. Hughes, 119 Pa. 301.

OPINION BY MR. JUSTICE DEAN, October 30, 1893 :

The defendant operates a steam railroad running through the borough of Newcastle. Its road crosses at grade South Mill street diagonally. The New Castle Electric Street Railway has its rails longitudinally on the same street; hence the two tracks cross each other at grade on this street. There are guard gates at the crossing, under the control of the defendant, to be raised or lowered on the approach of a locomotive to the crossing. On the 14th of March, 1891, the plaintiff, a shoemaker by trade, a cripple from birth in both feet, took a seat in the

street car to go north through the town. When the car came to a point about seventy-five feet from the crossing, a locomotive approached going southwest, the watchman lowered the gates, the street car stopped, the locomotive crossed, the watchman raised the gates, the car started, and as it reached the railroad track was struck by another locomotive following the one that had passed. There is some conflict in the testimony as to whether the gate was wholly or partly closed at the moment of collision. A house obstructs the view of the track in the direction from which the locomotive came, except when quite near the point of crossing.

The plaintiff, in the collision, was thrown out and seriously injured. Under the instructions of the court, the verdict was for defendant. There was some evidence, on part of defendant, that the collision was wholly the result of the negligence of the street car company ; that those in charge of the car disregarded the warning of the watchman and the lowering of the gate for the second locomotive to pass. But that the collision was the result of the negligence of one or other company, or of the concurring negligence of both, could not have been doubted on the evidence.

The learned judge of the court below, on the evidence, properly instructed the jury : (1) That if the collision was the result of negligence of both parties, each was answerable to plaintiff, and he could maintain his suit against either. (2) If the collision was the result wholly of the negligence of the street car company, the defendant was not answerable. But the plaintiff, in his several assignments of error, complains of the instructions with reference to his duty as a passenger under the circumstances here developed. The 5th and 6th assignments in substance embrace this alleged error. The court instructed the jury : " If Michael O'Toole upon that street car could have seen the engine, and did not undertake to see it, or did not exercise reasonable care for the purpose of ascertaining whether they could proceed across the railway track in safety, then he would be guilty of contributory negligence. . . . And if, by looking up the railroad at that time, he could have learned whether an engine was or was not approaching, and could at that time have gotten off the car if he discovered an engine approaching, and did not do that, then he would be guilty of contributory negligence and could not recover."

Then farther on is this instruction: " But the fact that safety gates are erected does not in any way affect the responsibility or the liability of the railroad company in the operation of its railroad, or in the management of its trains. . . . But if you conclude that the gates were not lowered, that fact of itself is not sufficient to warrant you in finding a verdict for the plaintiff. Had the plaintiff been walking along the street, the fact that the gates were not lowered would not be an invitation to him to cross the railroad in violation of the rule of law that he shall stop, look and listen, when approaching a railroad crossing. And that rule is not taken away because the plaintiff happened to be in a street car at the time."

Defendant's counsel argues that these are mere excerpts from the charge, and standing alone do not present fairly the instruction really given to the jury; that this can only be properly understood when read in connection with what preceded and followed. Certainly, the charge must be taken as a whole, to arrive at the correct meaning. We have carefully read it in the light of the evidence, and are forced to the conclusion the tendency was to mislead the jury. We find no evidence which warranted such instruction.

Negligence is the absence of care according to the circumstances. There was evidence here from which the jury might have found there was no negligence on part of defendant, and that the street car company was negligent; they might have found the defendant was negligent and the street car company was not; they might have found both were negligent. But a careful search for any evidence of negligence, under the circumstances, on part of plaintiff, has been fruitless.

He was a passenger of the street car company, which had contracted to carry him safely; he had a right to presume they would exercise the care required in this undertaking. When the car approached the crossing, it stopped; he was in no danger then, and had no reason to apprehend any; when it started, he had a right to believe it did so because the crossing was clear; running a distance of about seventy-five feet, the collision occurred; in the very few seconds which were necessary to accomplish this distance, the court in substance instructs the jury that it was plaintiff's duty to be on the lookout to learn if the railroad track could be safely crossed; and if, by so doing,

he could have seen the approaching locomotive, ordinary care required him to jump off.  To impose such a duty on a passenger under these circumstances is going much further than any court has yet gone.  All experience has demonstrated that to get off a moving car is highly dangerous; therefore, it is held that such an act is negligence per se, and the passenger if thereby injured, except in very rare cases, is guilty of contributory negligence and cannot recover.  Hence here, if the plaintiff had been on the lookout, and had seen the approaching locomotive, ordinary care did not require he should make a dangerous jump to escape a problematical collision.  Admit he had some reason to apprehend danger if he remained in the car, at the worst, this was only to him, a possible danger; a careful man, ignorant of the power of control of the engineer over the locomotive or of the motorman over the electric car, and knowing nothing of the rules governing them in approaching the crossing, might very well think one or the other would stop before reaching it.  He had no right or power to control or direct those in charge of either; he was warranted in assuming that they knew their business better than a shoemaker, and would by proper care avert the possible collision.  Therefore, holding him rigidly to the rule of ordinary care, at best, he had a choice of perils; a choice to be exercised on the instant, by a man crippled in both feet, and consequently a not very agile jumper. He had been put in this position by no act of his own, but by the negligence of one or other, or both of the railroad companies.

We fail to see any evidence of absence of ordinary care here, under these circumstances.  The instruction, in substance, that ordinary care required plaintiff to perform the duties of conductor and motorman; that practically, he was to exercise the same care as if he had been driving his own horse, " stop, look and listen," was erroneous, and calculated to mislead the jury. It would have been but a step further, and a short step at that, to have directed the jury to inquire whether plaintiff had not been guilty of contributory negligence in taking passage on a street car which he knew in its route would cross a steam railroad at grade.  The law imposes no such duty upon the traveler by public conveyance, as laid down in this charge.

The cases of Crescent Township v. Anderson, 114 Pa. 643,

and Dean v. Pa. R. R. Co., 129 Pa. 514, cited and relied on by appellee as sustaining the instruction complained of, really recognize the opposite doctrine. Both are cases where the plaintiffs, when injured, were riding in private vehicles driven by another, and both were injured by the contributory negligence of the driver, and a third party, the defendant. In both, the decision was put on the ground that the negligence of the driver of the horse was apparent, and he was to some extent under the direction or control of the party injured. There was no attempt, by remonstrance or otherwise, by the party injured, to restrain the negligent driver. The negligence of the driver was not, in either case, imputed to an innocent plaintiff, but the latter was held to have participated in the negligence which caused the accident. Carlisle v. Brisbane, 113 Pa. 544, is to the same effect, and the decision is expressly put on the ground that, although the conveyance was a private one, the injured party did not, to any degree, participate in the alleged negligence of the driver. The plaintiff here was a passenger in a public conveyance ; he conformed to the rules of the company ; kept his seat, relying on the vigilance and care of those in charge of the car, as his contract gave him the right to do. There was upon him no duty of moving the car with caution at dangerous crossings; no duty of watching for possible collisions, and jumping off in apprehension of them.

Consequently the learned court below erred in its instructions embraced in plaintiff's 5th and 6th assignments of error.

The judgment is reversed and v. f. d. n. awarded.