FANNIE L. PARKER, Appellee, v. THE DES MOINES CITY RAILWAY COMPANY, Appellant.

**Street railways:** INJURY TO PASSENGER: NEGLIGENCE OF MOTORMAN: EVIDENCE. In crossing a railroad track the motorman is bound to exercise the highest degree of care for the safety of his passengers, and he is not relieved of this duty merely because a flagman is stationed at the crossing. In this action for injury by collision with a railway train the evidence of the motorman's negligence is such as to require submission of that question to the jury.

**Same.** The mere fact that the railway company may also have been negligent will not relieve the street car company from the consequences of its negligence.

**Examination of witnesses:** SCOPE OF INQUIRY. A cause will rarely be reversed because of the admission of competent testimony developed on cross-examination, though not within the scope of the direct examination; as this is largely a matter of discretion, and the complaining party may, if he desires, cross-examine upon the new points.

**Street railways:** CROSSING ACCIDENT: NEGLIGENCE: INSTRUCTION. It is the duty of a street car mortorman upon approaching a steam railway crossing to take the highest precaution for the discovery ·of an approaching train, which ·doubtless includes the duty of stopping his car for that purpose. But having once brought his car under control and stopped the same on approaching the crossing it was not negligence, as matter of law, for him to obey a flagman's signal and proceed over the railroad track without again stopping to look for a train. Under such circumstances the question of his negligence is one of fact.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

MONDAY, NOVEMBER 20, 1911.

ACTION at law to recover damages for injuries received by plaintiff in a collision between one of defendant's cars and a train being operated by the Chicago, Rock Island & Pacific Railway Company, at a place where the street railway tracks cross the tracks of the steam road, in the city of Des Moines. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals. *Reversed.*

*Guernsey, Parker & Miller,* for appellant.

*Thomas A. Cheshire,* for appellee.

DEEMER, J.—The case as made for plaintiff in the petition is as follows:

That, on the 2d day of September, 1909, she entered one of the passenger cars of the defendant (car No. 169), which was being operated on the Ft. Des Moines Street Railway line. That the said line of the defendant company crosses the railway tracks of the Chicago, Rock Island & Pacific Railway Company at First and Vine Streets, in the city of Des Moines, and that, when the car on which plaintiff was riding reached the intersection of the defendant's track and the tracks of the Chicago, Rock Island & Pacific Railway Company at First and Vine streets, it was struck by an engine and train of the said Chicago, Rock Island & Pacific Railway Company, bound east to the Iowa state fair grounds, in the eastern portion of the city of Des Moines. That the said car on which plaintiff was riding was in charge of a motorman by the name of Williams, and there was stationed there a flagman. That said motorman, as he approached the intersection of the street railway and the Rock Island tracks, did not see the approach of the engine and train on said Rock Island tracks, although said engine and train were in plain sight, and said Rock Island train had the right of way at the intersection of said tracks at said time. That the said motorman did not stop his car north of the intersection of said tracks until the engine and train of

the Rock Island Railway had passed over said crossing, but caused his car to be moved forward over said intersection, with the knowledge or means of knowledge that the Rock Island engine and train had the right of way, and was moving eastward and about to cross said intersection. That the engine of the Rock Island train collided with the car of the defendant company on which the plaintiff was a passenger with great force, and knocked the defendant's car from the track on which it was running from fifteen to twenty feet immediately east of said crossing.

And the grounds of negligence are thus summarized:

That the plaintiff further states that the defendant was negligent, as follows: First. In that its motorman failed to stop his car before it reached the intersection of the tracks of the Rock Island Railway Company. Second. That the defendant was negligent, in that its motorman failed to stop his car at a place north of the track of the Rock Island Railway Company where the passenger train of the latter company would not collide with the defendant's car. Third. That the defendant was negligent, in that its motorman undertook to pass in front of the Rock Island train, which had the right of way. Fourth. That the defendant was negligent, in that its motorman, with knowledge or means of knowledge of the approach of the Rock Island train, caused his car to be moved over the crossing where it would be struck by the Rock Island train.

At the time of the accident complained of, the steam railway had in use a double track, extending from the passenger station of said railway company on Fourth street, in the city of Des Moines, to the fair grounds in said city. The defendant street railway company had a line of tracks in use, extending from Court avenue south and southwest to the army post, located south of the business section of the city of Des Moines, which said track, as it leaves Court avenue, runs along and upon First street for a number of blocks and intersects the Rock Island double track at Vine street, a distance of a block south of Court avenue. Said line of street railway also crosses the Des Moines Union tracks, the

Chicago, Burlington & Quincy tracks, and possibly other tracks located south of Court avenue. The accident happened on September 2, 1909, about 5:30 p. m., at which time the state fair was being held in the city of Des Moines.

At the intersection of the defendant railway tracks with the Chicago, Rock Island & Pacific tracks, there was in operation, prior to the convening of the state fair, a derailer switch just north of the north track of the Rock Island, some thirty-nine feet. The derailer lever, by means of which said switch was opened and closed, is located south of the south track of said Rock Island Railway Company at said track intersection. At the time the state fair convened, the defendant company spiked the derailer switch, so it could not be operated, and placed at the intersection of said tracks a flagman, whose duty it was to look for approaching trains on the Rock Island tracks, and give signals to the motormen to stop or cross, as occasion might warrant. Previous to this time, however, no switchman was located at such track intersection. The custom was for the motorman to approach the derailer switch and stop just north thereof. The conductor would get out of the car, cross the tracks, look for approaching trains, go to the derailer lever south of the tracks, close the switch, and, if the Rock Island tracks were free from approaching trains in near proximity, give a signal to the motorman to come ahead. During the state fair, however, the defendant company installed a switchman system, and the switchman was required to do the work which had been previously imposed upon the conductor and motorman.

The Chicago, Rock Island & Pacific Railway Company had also placed at said track intersection a flagman to warn, not only the motormen of street railway cars, but the traveling public who might be attempting to use the crossing.

On the day of the accident, the plaintiff took passage on car No. 169 at the corner of Fourth and Court avenue to go to her home at some point south of the Chicago, Rock

Island & Pacific Railway tracks. The car was well filled
with passengers. It is undisputed that as the motorman,
Williams, approached the derailer switch north of the north
track of the Chicago, Rock Island & Pacific Railway Com-
pany on First street he brought his car to a stop at the usual
stopping place. On the northwest corner of the intersec-
tion of First and Vine streets there was a three-story, brick
building covering the entire quarter block. The Kratzer
Carriage Company building was located on the southwest
corner of said street intersection. Vine street, between First
and Second streets, is built up on both sides with business
buildings. Between Second and Third on Vine street were
also buildings extending out to the street lines. The motor-
man, as he stopped at the derailer switch, could not see to
the passenger depot of the Chicago, Rock Island & Pacific
Railway Company located on Fourth street. The undis-
puted evidence is that, on account of the brick building on
the northwest corner of the street intersection, and also a
garage shanty or lean-to on the south side thereof, he had a
view only of about one hundred and ninety feet, or to the
alley running north and south between First and Second
streets. It is also shown that when he stopped he looked both
east and west, and saw no trains or moving cars on the Rock
Island tracks. As he stopped, the flagman, located at the
track intersection, gave him a signal to come on. He at once
released his brake, turned on the current, and moved south-
ward at the rate of five or six miles per hour. As the front
of his car reached the north rail of the north Rock Island
track, the flagmen, either the one placed there by the de-
fendant or the Rock Island Company, began to signal to the
motorman to stop his car. The motorman at that instant saw
the approaching engine, applied his brakes, turned off the
current, and did all that was possible to stop the car, but
before he could stop the same it had entered upon the south
track of the Rock Island Company, and the train coming
from the west collided with his car, carrying it a distance of

some twenty-five feet to the steel bridge of the Rock Island Company spanning the Des Moines river.

The motorman testified that he did not remember of having looked to the west for approaching trains after he stopped his car at the derailer switch and looked to the west and saw no train approaching. The undisputed evidence is that the train which collided with the defendant's car was proceeding from the passenger station at Fourth street to the fair grounds. There were six or seven cars attached to the engine, which was backing eastward. There was no one stationed on the tender of the engine to give signals of approaching danger. The train, as shown by the evidence, was running from twelve to fifteen miles per hour as it approached First street. It started from Fourth street, a distance of three blocks, was continually gaining headway, throttle was open, and it was proceeding very rapidly until it passed the alleyway running north and south between First and Second streets. The city ordinance of the city of Des Moines at the time provided that no train on any steam railway tracks should be operated within the city limits at a greater rate of speed than six miles per hour.

The case was submitted to the jury under instructions, some of which are challenged, and a verdict was returned for plaintiff in the sum of $5,500, upon which judgment was rendered in due course. Many errors are assigned, but the argument is confined to six main propositions. These will be considered in the same order as found in appellant's brief.

I. It is strenuously insisted that the verdict has no support in the testimony, and that no negligence on the part of the motorman is shown. With this contention we can not agree. In addition to the facts already recited, it appears that the motorman on defendant's car knew that the steam railway had habitually disregarded the speed ordinance; that it was customary for it to run its trains at the rate of speed that the train had which struck the street car; that

1. STREET RAILWAYS: injury to passenger: negligence of motorman: evidence.

the train with which the street car collided was being moved by an engine which was working steam full blast, with clouds of smoke and steam arising from the smokestack, with the engine bell ringing, and nothing save the obstructions heretofore mentioned to obstruct the view of the motorman. The defendant company had rules in force, at the time of the accident, from which we quote the following:

All street cars must come to a full stop before crossing any railroad track.

Should a motorman fail to stop a car, the conductor must see that he does stop.

The conductor must cross the railroad tracks, going clear to the opposite side of all tracks, looking in both directions on the railroad for approaching trains, engines or cars, and must not signal his motorman to cross until all moving trains, engines and cars have passed, and until he has seen that no other trains, engines or cars are following. When all is clear, the conductor will close the derailing switch, if there is one, and signal the motorman to cross. The motorman must close the car gates while crossing the tracks, and must not start his car until signal is given by conductor, and must then look for trains or other possible trouble before starting his car.

Motorman must not start car when crossings are run or derailers closed by any person other than his conductor or some other employee of this company. During daylight the conductor will give signal to start by a full swing of his arm from a back position to a forward position.

The employees of defendant failed to comply with this rule; but it is contended that by reason of the spiking of the switch this rule was abrogated. As to this, more hereafter. It also appears that at the place where the motorman stopped his car he could not see a train approaching from the west for more than one hundred and ninety feet; that without again stopping or looking toward the west he obeyed the signal of the flagman, and attempted to run over the crossing. By stopping or looking at a point fifteen or twenty feet north of the steam railway tracks, he could have seen

the approach of the train in ample time to have avoided the collision. The motorman knew that the steam road had trains running every ten minutes to and from the fair grounds on the day the accident happened, and testified that after he started to obey the signal of one of the flagmen he did not look west to see if a train was approaching until the front trucks of his car were upon the north track of the Rock Island Railway. True the motorman stopped the car at the accustomed place when the derailer was in use, but he knew that this switch had been spiked, and there was no necessity for his stopping at that particular place. By going twelve feet farther south, he could have seen the approaching train in time to have avoided the collision. Stopping there, he would have been from forty to fifty feet north of the place where his car was struck. Manifestly the question of the negligence of the motorman was for a jury. The presence of the flagman did not relieve the motorman from the exercise of the highest degree of care, for the reason that he was in control of a car filled with human beings, who were practically helpless, and had a right to rely upon the fact that the motorman would use a proper degree of care for their safety. The motorman was not justified in relaxing his vigilance because of the presence of the flagman. *Phila. R. R. v. Boyer,* 97 Pa. 91; *Selma St. Ry. Co. v. Owen,* 132 Ala. 420 (31 South. 598); *Cin. Co. v. Murray,* 53 Ohio St. 570 (42 N. E. 596, 30 L. R. A. 508).

That the employees of the steam railway company were also negligent does not relieve the defendant company. *Matthews v. Railway Co.,* 56 N. J. Law, 34 (27 Atl. 919, 22 L. R. A. 261); *O'Toole v. Pittsburg Co.,* 158 Pa. 99 (27 Atl. 737, 22 L. R. A. 606, 38 Am. St. Rep. 830); *Schneider v. Second Ave. Co.,* 133 N. Y. 583 (30 N. E. 752). There was ample testimony to take the case to the jury.

2. SAME.

The motorman, Williams, was a witness for the defendant, and he testified in chief as to what he did at and before

the time of the collision. On cross-examination, over de-
fendant's objections, he was permitted to tes-
tify as to a custom of the Rock Island and
other steam companies to run their trains over
the street car crossings at excessive rates of speed. The rul-
ing permitting this line of examination is challenged, for the
reason that no such field was opened by the examination in
chief. Appellate courts rarely interfere with such rulings.
As the plaintiff had the right to make the witness her own,
the trial court did not abuse its discretion in permitting the
witness to answer the questions on cross-examination. If
defendant had desired it, he might have cross-examined the
witness upon the new points brought out by the cross-exami
nation. At any rate, we are not justified in reversing the
case because of the rulings complained of. *Glenn v. Gleason,*
61 Iowa 32; *People v. O. & F.,* 83 N. Y. 436; *Chicago Co.
v. Merchants' Co.,* 83 Ill. App. 241. The testimony adduced
was competent, and no prejudice is shown.

III. The trial court gave the following instructions:
"In determining whether or not this defendant was guilty
of negligence, you will take into consideration the fact that
the law requires of them the highest degree
of care and prudence reasonably consistent
with the practical operation of its railway.
You will consider whether the motorman of
the defendant's car in charge thereof used all his faculties of
sight and hearing to ascertain the approach of danger;
whether he stopped his car and looked and listened for the
approach of trains on the Chicago, Rock Island & Pacific
Railway; whether he used the degree of care above stated in
all the things he did with reference to the management and
operation of said car. *And you are instructed that it was
the duty of the said motorman to stop and look at the point
where he might reasonably expect to see the approach of a
train on the Chicago, Rock Island & Pacific Railway track.*
The duty of the defendant, however, does not require it to

3. EXAMINATION OF WITNESSES: scope of inquiry.

4. STREET RAIL-WAYS: crossing accident: negligence: instruction.

act as an insurer of the lives and safety of its passengers. And when they have exercised the degree of care and prudence required, as hereinbefore explained to you, they are not responsible for accidents which occur from reasons beyond their control, and notwithstanding the exercise of this prudence and foresight required." The italicized portion of this instruction is vigorously assailed, and to our minds this presents the only doubtful question in the case. Was the motorman, in the exercise of the highest degree of care, required, as a matter of law, to stop and look at a point where he might reasonably expect to see the approach of a train on the steam railway?

We are constrained to hold that this instruction is too broad, and that it can not be sustained. As applied to the facts in the case, it was a virtual direction to the jury to find a verdict for the plaintiff; for, under the conceded facts, the motorman, although he stopped his car, did not do so at the point where he might reasonably have expected to see the approach of the train on the Rock Island tracks. The general rule is that both negligence and contributory negligence are questions for a jury, and the only exceptions arise where the facts are so clear that reasonable minds would not differ in their conclusions upon the subject. Of course, it was the duty of the motorman to look and listen for approaching trains upon the Rock Island track, and it may and doubtless was his duty to stop his car when approaching the track; but, having stopped his car and brought it under control, was it negligent for him to obey the flagmen's signals, and to proceed to cross the railway track without again stopping his car to see if a train was approaching? This is the pivotal question in the case. The trial court instructed that he owed such duty as a matter of law, and that if he failed to stop a second time he was guilty of negligence as a matter of law. We think the question, not one of law, but of fact for a jury. Of course, a jury might have found the motorman negligent in not stopping at the right place, or in failing to stop a

second time, after having once stopped at a place where he could not see an approaching train for a distance of more than one hundred and ninety feet, and if it had so found no court would be justified in interfering. But such conclusion is not the only one which might fairly be arrived at, in view of the presence of the flagman at the crossing and of the fact that the motorman had once stopped his car to get it under control and look for trouble. The whole matter was for a jury under proper instructions. Appellees say that under many decisions ordinary care may require one to stop, look, and listen for approaching trains before crossing a railway track; but, whatever the rule in other states, whatever the dictum in earlier cases, it is not the present rule of this court that one about to cross a railway track is bound, as a matter of law, to stop and look and listen. He is required to exercise his senses and look and listen, but he is not required to stop at any given place, as a matter of law. *Selensky v. Railroad,* 120 Iowa, 113; *Artz v. Railroad,* 34 Iowa, 153; *Starry v. Railroad,* 51 Iowa, 419; *Lang v. Railroad,* 49 Iowa, 469; *Benton v. Railroad,* 42 Iowa, 192; *Wesley v. Railroad,* 84 Iowa, 441; *Buelow v. Railroad,* 92 Iowa, 240; *Moore v. Railroad,* 102 Iowa, 595; *Schulte v. Railroad,* 114 Iowa, 89; *Reed v. Railroad,* 74 Iowa, 188; *Schmidt v. Railroad,* 75 Iowa, 606; *Willfong v. Railroad,* 116 Iowa, 548; *Meyer v. Railroad,* 134 Iowa, 722; *Hartman v. Railroad,* 132 Iowa, 582.

It is true, of course, that the motorman who was driving the car in question was bound to the exercise of the highest degree of care, foresight, and prudence in caring for the passengers on his car; but in view of the presence of the flagman at the crossing, it was, as we think, a question for the jury to determine whether or not, in the exercise of that care, he should have stopped his car at a different place from the one selected by him, or, having stopped where he did, should have stopped again, before proceeding to cross the steam railway tracks. Of course, the rule of the defendant

company should be considered on this branch of the case; but that rule did not require that stops be made at any particular place, although, of course, if a derailer switch was in operation, the stop would have to be made before the switch was reached; or that he should stop more than once when crossing the railway tracks. That the duty to stop at any given place was a question of fact for a jury, rather than of law for the court, see the following, among other, cases: *Gates v. Railroad,* 154 Pa. 566 (26 Atl. 598); *Colorado Co. v. Martin,* 7 Colo. 592 (4 Pac. 1118); *Annas v. Railroad,* 67 Wis. 46 (30 N. W. 282, 58 Am. Rep. 848); *Wood v. Railroad,* 84 Ga. 363 (10 S. E. 967); *Reed v. Railroad,* 74 Iowa, 188; *Chicago R. R. v. Hansen,* 166 Ill. 623 (46 N. E. 1071); *Winey v. Railroad,* 92 Iowa, 622; *Abbot v. Dwinnell,* 74 Wis. 514 (43 N. W. 496); *Eilert v. Green Bay Co.,* 48 Wis., 606 (4 N. W. 769); Chase v. Railroad, 78 Me. 346 (5 Atl. 771); Eskridge v. Railroad, 89 Ky. 367 (12 S. W. 580); *Chicago R. R. v. Wilson,* 133 Ill. 55 (24 N. E. 555). We have found no decisions to the contrary, and counsel have cited nothing in support of the instruction. It can not be approved as a correct announcement of the law, without danger of making a vicious precedent.

There seems to be no merit in any of the other contentions made for the appellant; but for the error pointed out the judgment must be, and it is, *reversed.*