MARY A. COCKE, Appellee, v. DES MOINES CITY RAILWAY COMPANY, Appellant.

**Street railways:** CROSSING ACCIDENT: NEGLIGENCE: INSTRUCTIONS.
1 Where the motorman of a street car stopped his car at the usual place on approaching a railroad crossing to look out for trains, he was not negligent as a matter of law in failing to again stop, look and listen upon closer approach to the railway track, although he was bound to use the highest degree of care for the safety of his passengers.

**Same:** NEGLIGENCE: SUBMISSION OF ISSUES. The evidence in this
2 action is held to require a submission of defendant's negligence to the jury.

**Same:** NEGLIGENCE OF MOTORMAN. It can not be said as a matter
3 of law that a street car motorman in approaching a railway crossing is justified in passing over the crossing, upon the signal of a watchman to do so, without exercising any caution himself to ascertain the approach of a train.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

THURSDAY, MAY 16, 1912.

ACTION to recover damages for personal injury. Judgment for plaintiff, and defendant appeals.—*Reversed.*

*Guernsey, Parker & Miller* for appellant.

*Clark & Hutchinson* and *Thos. A. Cheshire* for appellee.

WEAVER, J.—The Chicago, Rock Island & Pacific Railway Company owns and operates a double-track line of railroad between its station in the city of Des Moines and the State Fair Grounds on the east border of the city. The defendant, Des Moines City Railway Company, owns and operates an electric street railway which crosses the Rock Island tracks and the tracks of other railroads a short distance east of the station aforesaid. Prior to the accident hereinafter mentioned, it had been the custom of the City Company to protect its cars and passengers in making such crossing by the use of a derailer switch, and by requiring the motorman to stop his car before entering the zone of danger and the conductor to walk over the crossing, and, if no train was approaching, to close the switch, and signal the motorman forward. At the date of the accident the State Fair was in progress, and the passenger traffic upon both lines was heavy. During that period defendant spiked its derailer so that it could not be opened, and placed at the intersection a watchman whose duty it was to give the necessary signals to approaching cars to prevent accidents or collisions. The Rock Island Company also employed a watchman for the performance of similar duties at the same crossing. On September 2, 1909, the plaintiff, with others, were passengers on defendant's car No. 165, which was moving south over the crossing above described. The motorman stopped the car at the place where he had been accustomed so to do near the derailer switch about forty feet north of the Rock Island track, and where he could see, if he looked, about one hundred and ninety feet westward along the last-named track. He testifies that he saw two flagmen on the crossing in front of him, the one nearest his car using a white flag and the one farther south a red flag, though he did not know by which company they were employed. According to his statement, the watchman with the white flag motioned him to come forward, and, as he was in the act

of attempting the crossing, a train was discovered approaching from the west on the south track of the Rock Island Road, and the other watchman signaled the motorman to stop, but too late to avoid a collision which followed. In that collision plaintiff, with others of the passengers, received injuries of greater or less severity.

This is the same collision, and, with one exception, to which we shall later make reference, involves the same state of facts, so far as the question of negligence is concerned, which we had to consider in *Parker v. Railway Co.*, 153 Iowa, 254. The negligence charged consists of the alleged failure of the defendant's motorman to discover the approach of the Rock Island train and guard against the threatened collision, in failing to stop the car before entering upon the Rock Island tracks, and in entering upon said tracks with knowledge or means of knowledge of the approach of a train having preference in right of way at the crossing. The defendant denies all charges of negligence on its part. Upon the trial and in the argument, it is not seriously contended that there was no negligence in the matter of this collision, but it was and is the position of the defendant that the negligence to which the collision should be attributed was that of the Rock Island Company alone, for whose omissions and mistakes defendant is not liable.

I. The evidence is undisputed that the motorman stopped his car at a point near the derailer and about forty feet north of the Rock Island tracks, and looked for approaching trains. Buildings in that

1. STREET RAIL-
WAYS: cross-
ing accident:
negligence:
instructions.

vicinity obstructed his view to the west belond a point about one hundred and ninety feet from the crossing. He could have stopped or looked again at a point nearer the track, giving a more extended view to the west, and the jury could properly have found that, had he done so, he would have discovered the approaching train in time to have prevented

the collision.  But, relying upon the signal of the watch-
man who motioned him forward as an assurance that the
way was clear, he proceeded from his position at the de-
railer, and undertook to make the crossing without again
stopping or looking to the west.  Neither flagman testified
as a witness upon the trial below.  As bearing upon this
state of facts, the trial court both in the *Parker* case and
in the case at bar instructed the jury as follows: "In
determining whether or not this defendant was guilty of
negligence, you will take into consideration the fact that
the law requires of them the highest degree of care and
prudence reasonably consistent with the practical operation
of its railway.  You will consider whether the motorman
of the defendant's car, in charge thereof, used all his
faculties of sight and hearing to ascertain the approach of
danger; whether he stopped his car and looked and listened
for the approach of the train on the Chicago, Rock Island
& Pacific Railway; whether he used the degree of care
above stated in all the things he did with reference to the
management and operation of said car.  *And you are in-
structed that it was the duty of the said motorman to stop
and look at the point where he might reasonably expect to
see the approach of a train on the Chicago, Rock Island
& Pacific Railway tracks.*  The duty of the defendant, how-
ever, does not require it to act as an insurer of the lives
and safety of its passengers.  And when they have exer-
cised the degree of care and prudence required, as herein-
before explained to you, they are not responsible for acci-
dents which occur from reasons beyond their control, and
notwithstanding the existence of this prudence and fore-
sight required."  In our opinion in the *Parker* case the
proposition of this instruction which makes it the duty of
the motorman as a matter of law to stop his car before
entering upon the track was disapproved, and because of
such error a new trial was ordered.  The reasons for this
holding are there stated quite fully, and we need not here

repeat them. That precedent controls upon the same point in this case, and we are not disposed to depart from it. It follows that the assignment of error upon the giving of the sixth paragraph of the court's charge must be sustained.

II. In the *Parker* case the plaintiff introduced in evidence the rules of the defendant company governing the duty of its motormen and conductors in the handling of

2. SAME: negligence: submission of issues.

cars at railway crossings, and his testimony was awarded weight in the discussion of the record upon appeal. In the case at bar the rules were not offered in evidence, and it is with respect to this feature of the trial that this record differs in any material respect from that in *Parker v. Railway Co.* This distinction is pointed out in argument as being sufficient to require a different conclusion upon the question of defendant's negligence. We can not so hold. It is to be admitted that in the former case the rules were treated as an item of evidence worthy of consideration, but they constituted but one of many pertinent facts and circumstances affecting the merits of the claim and defense. Their absence in this case may to that extent lessen the strength or persuasiveness of the plaintiff's showing, but it by no means leaves the case so devoid of support as to require its withdrawal from the jury. For a more specific statement of the facts developed, aside from the company's rules, we refer to the opinion in *Parker v. Railway Company,* where they are stated with considerable particularity. It is enough here to say that they are amply sufficient to take the issue to the jury.

III. It is argued by counsel that the opinion in the *Parker* case misstates or misapplies the law, and a reconsideration of the holding there made upon

3. SAME: negligence of motorman.

the sufficiency of the evidence is asked. The point urged, when reduced to its briefest expression, is that the motorman, having been signaled

forward by one of the flagmen, could rightfully rely thereon, and this court should say as a matter of law that a charge of negligence can not be predicated upon the fact that, relying upon such signal, the motorman took his car filled with passengers into collision with an oncoming train which he could easily have avoided had he taken the precaution to glance to the right after passing the derailer forty feet north of the place of the accident. If this be the law, we confess to having misapprehended its true import. It may be true, it doubtless is true, that the presence of the flagman and his signal are material facts bearing upon the ultimate question whether the motorman, and, through him, the defendant, exercised that high degree of care which the law imposed upon them for the protection of their passengers, but we must respectfully insist that there is no sound rule or principle of law and no decided case of recognized authority to sanction the holding that a motorman about to make a dangerous crossing with a load of passengers and receiving such signal may abandon all exercise of caution on his own part, and as a matter of law be held guiltless of negligence, although the peril into which he plunges his living freight could have been escaped had he looked and acted while still within the zone of safety. We have just upheld the defendant's contention that an instruction making it negligence as a matter of law for the motorman to enter upon the crossing without first stopping his car was erroneous, but we can not follow counsel to the opposite extreme, and hold that as a matter of law the full measure of care required of the defendant and its motorman is satisfied when the latter undertakes to shift the whole responsibility for the safety of the crossing upon another person or another servant, and ceases to exercise any vigilance whatever on his own part against the possibility of a collision. Whether due care has been exercised under such circumstances is a

question of fact and not of law, and it is for the jury, and not for the court, to determine it.

For the error in the instruction to which reerfence has been made, the judgment below will be reversed and a new trial ordered.—*Reversed.*