ALEX. FONTANA, Appellee, v. FORT DODGE, DES MOINES & SOUTHERN RAILROAD COMPANY, Appellant.

**RAILROADS:** Accidents at Crossings—Negligence—Evidence. Evidence reviewed, and held to present a jury question: (a) Whether plaintiff, injured on a crossing, was guilty of contributory negligence; and (b) whether defendant was guilty of negligence in operating the car at a high rate of speed.

*Appeal from Polk District Court.*—WILLIAM S. AYRES, Judge.

TUESDAY, MAY 22, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

ACTION to recover damages for personal injuries sustained by plaintiff as the result of the collision of one of defendant's cars with an automobile, in which plaintiff was riding with another person. The accident happened January 10, 1915. The automobile was struck by a north-bound car on defendant's track, and it is claimed by plaintiff that the automobile had stopped when it was upon the railway track. Plaintiff alleged that he sustained a double fracture of the lower jaw and other bruises and injuries; that he has suffered mental and physical pain and loss of wages. There was a trial to a jury, and a verdict and judgment for plaintiff in the sum of $925. Defendant appeals.—*Affirmed.*

*George E. Hise, S. R. Dyer, J. W. Jordan,* and *W. R. Dyer,* for appellant.

*Thomas J. Guthrie, Miller & Wallingford,* and *Oliver H. Miller* for appellee.

PRESTON, J.—Plaintiff alleged that de-

RAILROADS:
accidents at
crossings:
negligence:
evidence.

fendant was negligent in the following particulars: First, in operating its car at the highway crossing where the automobile was struck at a high and dangerous rate of speed; second, in approaching the crossing without giving the signals required by law; and third, in not maintaining a proper and safe crossing at said point, in that it failed to have the same properly planked with boards of sufficient length, and failed to have sufficient boards between the rails, and failed to have an approach to the rails, all of which caused the automobile to become stalled upon the railway track when the wheels went down between the rails, and the engine of the automobile died. The answer of the defendant was in general denial, and also pleading that plaintiff was guilty of contributory negligence.

The principal argument of appellant in this court is that the plaintiff was guilty of contributory negligence, and that, had he exercised ordinary care, and used his senses of sight and hearing, there being nothing to obstruct his view at the crossing, he would not have failed to see the approaching car in time to avoid the accident and injuries; and that the proximate cause of his injuries and damage was not the alleged negligence of the defendant, but the plaintiff's own acts and negligence.

No evidence was introduced on behalf of the defendant. There was some conflict in the testimony of plaintiff's witnesses, and doubtless some of the testimony is exaggerated to some extent. The credibility of the witnesses was for the jury, and we think the question of defendant's negligence in operating the interurban car at the time in question, whether it was at a high and dangerous rate of speed under the circumstances, whether signals were given, whether the defendant maintained a proper crossing, and whether plaintiff was guilty of contributory negligence, was

for the jury, and that the verdict is sustained by the testimony.

Without going into the evidence as to the three alleged grounds of negligence, it is enough to say that there was evidence to sustain all three grounds, and, unless it be held that plaintiff was guilty of contributory negligence, then the jury could have found that the negligence alleged was the proximate cause of the injury. As said, the principal ground relied upon, apparently, in this court for a reversal, is the alleged contributory negligence of the plaintiff. It is true, as contended by appellant, that plaintiff could have seen up the track from the crossing some 2,000 or 2,036 feet, and if that was all there was to it, there would be force in appellant's contention; but there is evidence tending to show, and from it the jury could have found, that the automobile engine died, as the witnesses put it, when on the railroad track. The automobile side curtains were up, also the wind shield, and plaintiff was attempting to unbutton the curtains to get out when he was struck by the interurban car. The testimony is that he took hold of the curtains to open the door for getting out, and could not see anything more, for that "knocked him out," as he puts it. It would not take the interurban car very long to go 2,036 feet, going at the rate of 45 miles an hour. There is testimony tending to show that the parties in the automobile were noticing up the track when approaching the crossing in question.

The place where plaintiff was injured was the first highway crossing south of Oralabor, a small mining village on defendant's line of road in Polk County. Counsel for appellant and appellee do not agree exactly as to the statement of the facts shown by the record, each taking the view most favorable to his contention. If the evidence was as contended by appellant, and the jury had so found, a finding for the defendant would have been sustained; and

so, too, if as contended by appellee. We shall set out the record in a general way, without going too much into detail. It appears that, at Oralabor, the tracks of the Chicago & Northwestern Railway run north and south, and just east of said tracks and parallel thereto are the interurban tracks of the defendant company. The defendant's tracks at this point consist of a main track, just east of which is a switch track. Some 275 or 300 feet south of the Northwestern depot at Oralabor is the public highway, running east and west, and the crossing at which plaintiff was injured. The automobile was being driven west upon the highway at the same time a southbound Northwestern passenger train was making the station stop at the depot. There is evidence that the auto was first stopped within 50 to 75 feet east of the main track of the interurban line; that the plaintiff and the driver of the automobile were observing the Northwestern train at the depot some 300 feet or so north, and were awaiting its passage south before crossing the Northwestern track, about 60 feet or more west of the main track of the interurban.

Plaintiff employed the driver to run the machine, which belonged to the driver, Bartoletti. Plaintiff got into the automobile at house No. 17 in said village, and took a seat on the right-hand, or north, side of the car, the car being a left-hand drive, plaintiff occupying the same position until a moment prior to the collision. Plaintiff and the driver drove from house No. 17 to 19, west along the main street of the village, then turned to the left, and drove south along the highway for a distance of 275 feet, then turned west to the right at what plaintiff calls the corner. This corner where plaintiff turned is 96 feet east of the crossing where the accident occurred. When the auto was upon the switch track of the interurban company, it was passed by one Antonio, who was on foot, and about to cross the Northwestern track ahead of the southbound train.

As he crossed the interurban main track, he looked north and south, but did not see any car on defendant's track. While this witness was continuing westward toward the Northwestern track, the automobile was stopped 10 or 15 feet east of the main interurban track, according to the testimony of some of the witnesses, and they say that, during all the time they were progressing westward, both plaintiff and the driver were looking north and south for an interurban car, but none was in view. As the Northwestern train started from the depot, the automobile had been again started west, and, as witness Antonio reached the Northwestern track, he testifies that he turned, and saw that the automobile had stopped upon the defendant's main track. According to the testimony of plaintiff, from the time they started up this last time until the auto got on the defendant's main track, plaintiff had been on the lookout for an approaching interurban car, both from the north and south, as had the driver. Plaintiff, after looking to the south and then to the north, had turned around to unfasten the north curtain, in order to get outside to start the engine of the auto, which had died. At the time Antonio observed the auto standing upon defendant's main track, the Northwestern train was coming from the depot. He then looked to the south, and saw an interurban car just coming into view, 2,036 feet away. Another witness testifies to standing upon the ground between the Northwestern and the defendant's tracks, and that he had seen the automobile come to a sudden stop upon the defendant's main track, and at that time had seen the interurban car just coming into view. The jury could have found from the testimony that the interurban car of the defendant which struck the parties had been in view at the instant the automobile stopped upon defendant's main track, and that the sudden stop and the killing of the engine had been caused by the front wheels' dropping between the

planks between the rails. A witness testifies that, as near as he could tell, the head end of the Northwestern train was just over the crossing at the time of the collision. Another witness says that he saw the auto on defendant's track, and that, from the time he saw the interurban until the collision, was about one half a minute. Some of these witnesses testified that the defendant's interurban car was going at the rate of 45 miles an hour. There is evidence that, after striking the automobile, the car went past the crossing 150 feet. Some of these witnesses say that they did not hear any whistle or bell, although one witness says that he had heard a whistle.

It is said by appellant that, had plaintiff looked for the approaching car at any time when within 50 feet of the track, he could, under the evidence, have seen it, and that plaintiff had a clear and unobstructed view of the approaching car at any time he was within 96 feet of the track, for over half a mile, and that, therefore, as a matter of law, under the evidence, plaintiff was guilty of contributory negligence; and, in support of these propositions, they cite *Powers v. Iowa Cent. R. Co.,* 157 Iowa 347; *Reeves v. Dubuque & S. C. R. Co.,* 92 Iowa 32, 35; *Bloomfield v. Burlington & W. R. Co.,* 74 Iowa 607; *Landis v. Interurban R. Co.,* 166 Iowa 20, 32; *Wilson v. Illinois Cent. R. Co.,* 150 Iowa 33; *Duggan v. Chicago, M. & St. P. R. Co.,* 179 Iowa 1072; *Rupener v. Cedar Rapids & I. C. R. & L. Co.,* 178 Iowa 615; and other cases.

Counsel, we think, misapprehend the record to some extent, under the evidence before referred to. The defendant's interurban car was not in sight at the instant the automobile became stalled upon defendant's track,—at least the jury could have so found, and it could also have found that plaintiff and the driver had been diligent in looking for a car on defendant's track, looking both north and

south at that time, and that, about half a minute later, and while plaintiff was endeavoring to unfasten the curtains on the north side and open the door to get out of the car to crank the engine, the interurban car struck the south side of the automobile; and, as said, the jury could have found that the interurban car was going at the rate of 45 miles an hour, and that no attempt was made to slacken the speed when approaching the stalled automobile.'

In argument, appellee refers to the interurban car as coming around the curve 2,036 feet from the crossing, and refers to appellant's blue print; but, as we understand the blue print, it does not show a curve. One witness speaks about a turn. But, however this may be, counsel for both plaintiff and defendant concede that the car came within view 2,036 feet from the crossing, and that it would travel that distance in about half a minute. Under this record, the question of plaintiff's contributory negligence was for the jury. Appellee cites, as bearing upon this proposition, among other cases: *Lockridge v. Minneapolis & St. L. R. Co.*, 161 Iowa 74; *Wiar v. Wabash R. Co.*, 162 Iowa 702; *Dusold v. Chicago, G. W. R. Co.*, 162 Iowa 441; *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142; *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187; *Case v. Chicago, G. W. R. Co.*, 147 Iowa 747, 752.

We think, also, that the question of the alleged negligence of defendant in operating the car at a high rate of speed, under the circumstances, was for the jury. Appellee cites on this point the *Platter, Wiar,* and *Lockridge* cases, supra, and *Morgan v. Iowa Cent. R. Co.*, 151 Iowa 211, at 214.

Appellee cites the four last named cases also, to sustain his proposition that the defendant was, under the evidence, negligent in approaching the stalled automobile without giving the signals required by law, and that this was a jury question also; and cites also, *Wesley v. Chicago, St.*

*P. & K. C. R. Co.,* 84 Iowa 441, and *Morgan v. Iowa Cent. R. Co.,* supra, to the point that the case was properly submitted to the jury on the question as to the alleged negligence of defendant in not maintaining a proper crossing. Without going into the evidence more in detail, and without reviewing the cases cited further, it is enough to say that, under the record, these were all jury questions.

The more important propositions raised and relied upon have been noticed, and we think those already noticed are decisive of the case, but there is one other matter we may refer to briefly. Appellant complains that Instruction No. 5 may have stated the law correctly, but that it is inapplicable to this case, because there is no evidence to warrant such an instruction. This has reference to the statutory duty of the defendant to sound the whistle on its car and ring the bell, and further, states that, if the jury should find that, on account of the situation and condition at the crossing, and the rate of speed of the car, ordinary care required that defendant's employees operating the car should have given the additional warnings of its approach and failed to do so, and because of such failure the collision occurred, such failure would constitute negligence on the part of the defendant. But the exception taken to this instruction at the trial was that "it is incomplete and prejudicial; that the same limits the element of plaintiff's negligence, the contributory negligence or the negligence of the driver of the automobile; and that the law is that, even though the defendant was negligent in the respects charged, still defendant would not be liable because of the contributory negligence of plaintiff or his driver."

At the time of the exception, the court informed counsel that this matter so referred to in this exception is covered by other instructions of the court on contributory negligence, and we think this is so.

It is our conclusion that there is no prejudicial error shown, and the judgment is, therefore,—*Affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.