ISAAC HUGHES, RESPONDENT, v. ATLANTIC CITY AND
SHORE RAILROAD COMPANY, APPELLANT.

Argued June 27, 1913—Decided January 29, 1914.

1. In an action for personal injuries caused by the explosion of an electric light bulb in the ceiling of a passenger car, the trial judge charged that the burden of proof as to showing the actual cause of the accident shifted from the plaintiff to the defendant, and imposed upon the latter the burden of making an explanation exculpating itself from negligence. *Held,* that this was an unwarranted extension of the application of the maxim *res ipsa loquitur.*

2. In actions for negligence where the maxim *res ipsa loquitur* applies, the trial judge may hold that the circumstances are such as will, unexplained, permit the jury to draw the inference of negligence, but that inference is for the jury and not for the court.

3. In actions for negligence where the maxim *res ipsa loquitur* applies, the most that is required of the defendant is explanation, not exculpation; and if the explanation leaves the minds of the jury in equipoise, the defendant is entitled to a verdict because the plaintiff has failed to prove his case by the weight of the evidence.

4. The burden of proof in the sense of the duty of the party having the affirmative of the issue to establish the proposition at the end of the case, never shifts; but in the sense of the duty of going forward in argument or presenting evidence, may shift as one side or the other satisfies the judge that the evidence suffices to make a *prima facie* case in his favor.

On appeal from the Supreme Court.

For the plaintiff, *Scovel & Harding.*

For the defendant-appellant, *Bourgeois & Coulomb.*

The opinion of the court was delivered by

SWAYZE, J.    The plaintiff, a passenger in a car of the defendant, was injured by fragments of glass from the explosion of an electric light bulb in the ceiling of the car. There was no proof of the cause of the explosion; the plaintiff went no

further than to testify that "probably it was a weak bulb and the voltage might have run up on it, and of course it had a tendency to burst the globe." The learned trial judge in view of the high degree of care required of a carrier of passengers told the jury that "when an accident of this kind happens to some of the means of transportation, the law shifts the burden of proof from the plaintiff as to the explanation or showing the actual cause to the defendant, and imposes upon it the burden of making an explanation exculpating itself from negligence." The question he put to the jury was: "Has the defendant done that?" To leave no doubt of his meaning he added: "The explanation is one that you must pass upon, whether or not the burden which the law casts upon the defendant in a case of injuries, an accident of this kind, has been met. If it has, then, of course, the negligence that the law would infer from the proof of the facts of the accident and the nature of it, does not exist, and the company would not be answerable at all."

The effect of this charge was to relieve the plaintiff from the duty to satisfy the jury by the preponderance of the evidence that the defendant had been negligent, and to deprive the defendant of his right, which we have said is a substantial one, to have the plaintiff bear the burden of the affirmative. *Bien v. Unger,* 35 *Vroom* 596; *McGilvery v. Electric Light and Power Co.,* 34 *Id.* 591. The learned trial judge distinctly said that this burden shifted to the defendant and he did not even submit to the jury the question whether the plaintiff had established negligence; he treated that as a matter of legal inference and only left to the jury to say whether the defendant had exculpated itself. He thus put upon the defendant in a case where there was no direct evidence of negligence a burden from which it would have been free in a case where there was direct evidence. Instead of the question that has been so much discussed in the cases, whether negligence may be inferred from the mere fact of injury, we now have the proposition that the inference of negligence is so strong that the jury need not consider it at all, but need only consider whether the defendant has exculpated himself. This is an unwarranted ex-

tension of the application of the maxim *res ipsa loquitur.* The
importance of the rule which finds expression in that maxim is
found in the province of the trial judge and not in the prov-
ince of the jury. He is called on in the first instance to say
whether there is any evidence of negligence to go to the jury;
in the absence of direct evidence, he may, in cases where the
maxim applies, hold that the circumstances are such as will,
unexplained, permit the jury to draw the inference of negli-
gence; but that inference is still one for the jury and not for
the court. They may not believe the witnesses; the circum-
stances may be such that the jury will attribute the injury to
some cause with which the defendant has nothing to do; they
may find the inference of negligence too weak to persuade their
minds; they may think a reasonably prudent man would have
been unable to take precautions to avoid the injury; and in
any event they may render a verdict for the defendant. This
is within their province even when there is no explanation by
the defendant. When there is such explanation, it is for the
jury to decide just as in the ordinary case of whatever kind,
what the actual facts are and what inference should be drawn
therefrom. The most that is required of the defendant is ex-
planation, not exculpation; and that explanation may leave
the mind in equipoise in which case the defendant would be en-
titled to a verdict because the plaintiff has failed to prove his
case by the weight of the evidence.

The question discussed in the cases that involve the applica-
tion of the maxim *res ipsa loquitur* has always been whether
mere proof of the injury justified a jury in drawing an infer-
ence of negligence so that a nonsuit would be improper, or in
other words, whether it sufficed to prevent a nonsuit. Negli-
gence in such a case may be a permissible inference but is not
a necessary one as the judge's charge treated it. In the first
case in which the maxim was discussed in this state, Chief
Justice Beasley who dissented because he thought the plaintiff
had made out a case, said that the facts as proved would have
legally warranted a verdict against the defendants, but he did
not suggest that in the absence of explanation such a verdict
would have been required, and the court would have been justi-

fied in directing a verdict for the plaintiff. The reason, of course, is that negligence in such a case is only a matter of inference and under our system is for the jury.

The rule has been stated with great accuracy by Mr. Justice Dixon, speaking for this court, in an action by a passenger against a carrier. He says: "The rule supported by authority is that when a passenger shows that he was injured through some defect in the appliances of the carrier, or through some act or omission of the carrier's servant, which might have been prevented by due care, *then the jury have the right to infer negligence,* unless the carrier proves that due care was exercised." *Whalen* v. *Consolidated Traction Co.,* 32 *Vroom* 606. In *Mumma* v. *Easton and Amboy Railroad Co.,* 44 *Id.* 653, we again said that the meaning of the maxim *res ipsa loquitur* was that "the occurrence itself in the absence of explanation by the defendant affords *prima facie* evidence that there was want of due care." It is evidence; whether it amounts to proof is for the jury to say, even in the absence of explanation by the defendant. A very good statement of the law in a case much like the present is to be found in *White* v. *Boston and Albany Railroad,* 144 *Mass.* 404. The court said: "If the shade was defective and unsafe, the question whether it was in that condition through the negligence of the defendant would be for the jury; and the fact that it broke and fell from the use for which it was intended would be evidence that it was defective and unsafe, and, if not explained or controlled, would be *sufficient evidence to authorize the jury to find* that the defendant was negligent in regard to it." This is a full recognition of the ordinary rule that inferences from the facts of the case are for the jury. The result we reach is also sustained by a recent opinion of Mr. Justice Pitney in the United States Supreme Court. *Sweeney* v. *Irving,* 228 *U. S.* 233.

The inference of negligence from the mere happening of the accident may be a legal inference in the sense that it is permitted by the law, but it is not a legal inference in the sense that it is required. It is true that in some cases language may be found to the effect that under certain circumstances, the

burden of proof shifts, while other cases declare quite as explicitly that the burden of proof never shifts. The seeming conflict arises from the ambiguous meaning of the words "burden of proof" as applied to jury trials. This ambiguity is dealt with by Thayer in two of the most enlightening chapters of a most enlightening book, well said by Wigmore to be epoch-making (*Preliminary Treatise on Evidence* 353), and by Wigmore, with a somewhat different form of statement and ample citation of authorities (*Wig. Ev.*, § 2483, and the following). In one sense "burden of proof" means the duty of the actor, *i. e.*, the party having the affirmation of the issue to establish the proposition at the end of the case. In this sense the burden never shifts. The distinction is pointed out in a case cited by Thayer, of an action to recover damages for injury caused by the explosion of a boiler of a steamboat in which the plaintiff was a passenger. *Caldwell* v. *New Jersey Co.*, 47 *N. Y.* 282, 290. In a second sense the expression means the duty of going forward in argument or in producing evidence, and in this sense the burden may shift as one side or the other satisfies the judge that the evidence suffices to make a *prima facie* case in his favor. The practical distinction is well stated by Wigmore and it is, as he says, important: "The risk of non-persuasion operates when the case has come into the hands of the jury, while the duty of producing evidence implies a liability to a ruling by the judge disposing of the issue without leaving the question open to the jury's deliberations." *Wig. Ev.*, § 2487. In applying the law to a case like the present, we think it clear that the plaintiff was bound to satisfy the jury by the preponderance of evidence that the defendant was guilty of negligence that caused the accident; if he introduced no evidence or no evidence from which an inference of negligence could be drawn, it would be the duty of the judge to direct a verdict for the defendant; if he introduced evidence which permitted or required an inference of negligence, it would be for the jury to say whether they believed the witnesses and, where an inference of negligence was permissible but not required, whether they drew that inference. The mere occurrence of the present injury did

not require a finding of negligence since the bulb may have burst from some cause beyond the defendant's control. When the judge said that the burden shifted, the context shows that he meant the duty of persuasion upon the whole case. In no other sense was the jury concerned with burden of proof. He thereby imposed upon the defendant a duty that the law imposes on the plaintiff.

For the failure to submit to the jury the question of defendant's negligence upon the whole cause, the judgment must be reversed to the end that a *venire de novo* may issue.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, KALISCH, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ. 10.