MEMPHIS ST. RY CO. *v.* CAVELL.

(*Jackson.* April Term, 1916.)

1. **CARRIERS.** Carriage of passengers. Degree of care.

The degree of care imposed on a carrier of passengers, such as a street railway, by law and on grounds of sound public policy, is the exercise of the utmost diligent skill and foresight. (*Post pp.* 465, 466.)

Cases cited and approved: Ferry Co. v. White, 99 Tenn., 256; Railroad v. Flake, 114 Tenn., 671; Christie v. Griggs, 2 Camp., 79; Stokes v. Saltonstall, 38 U. S., 181; N. J. R. & Transp. Co. v. Pollard, 89 U. S., 341; Gleason v. Ry. Co., 140 U. S., 435; Sweeney v. Erving, 228 U. S., 233; Inland & Seaboard Co. v. Tolson, Adm'r., 139 U. S., 551; Chicago Union Traction Co. v. Uree, 218 Ill., 9.

Case cited and distinguished: Railroad v. Kuhn, 107 Tenn., 106.

2. **NEGLIGENCE.** Res epsa loquitur.

In general, mere proof that an accident injurious to plaintiff has occurred does not justify a verdict or judgment imposing liability therefor upon the defendant. (*Post, pp. 466, 467.*)

3. **NEGLIGENCE.** Burden of proof.

The law imposes on plaintiff suing for injuries caused by negligence the burden of showing by a preponderance of the evidence that the negligence was the cause of his injury, and that defendant was responsible for the negligence. (*Post, pp. 467-470.*)

Cases cited and approved: Simpson v. Omnibus Co., L. R., 8 C. P., 390; The Annot Lyle, 11 P. D., 114; The Indus, 12 P. D., 46; Carpus v. Railroad, 5 Q. B., 747; Skinner v. Railroad, 5 Exch., 787; Scott v. London Dock Co., 3 H. & C., 596; Kearney v. Railroad, L. R., 5 Q. B., 411; Byrne v. Boadle, 2 H. & C., 722; Briggs v. Oliver, 4 H. & C., 403; Brown v. Union P. R. Co.,

Memphis St. Ry. Co. v. Cavell.

81 Kan., 701; McGinn v. N. O. Ry. & Light Co., 118 La., 811; So. P. C. v. Hogan, 13 Ariz., 34; Railroad v. Hadley, 170 Ind., 204; Hughes v. Railroad Co., 85 N. J. Law, 212; Sweeney v. Erving, 228 U. S., 233.

Cases cited and distinguished:   De Glopper v. Railway & Light Co., 123 Tenn., 633; Stokes v. Saltonstall, 13 Pet., 18.

4. NEGLIGENCE.  Pleading and proof.
Plaintiff suing for injuries caused by negligence is under the burden that his proof in substance shall correspond with the averments of his pleadings.   (*Post, pp.* 467-470.)

5. APPEAL AND ERROR.  Harmless error.  Instruction.
In an action against a railway for injuries, where, under all the evidence, there was no material issue of fact for the jury to determine on the question of defendant's negligence, error in charging the doctrine of *res ipsa loquitur* was harmless.  (*Post, pp.* 470, 471.)

Case cited and approved:   Lowry v. Railroad, 117 Tenn., 507.

6. CARRIERS.  Injuries.  Negligence.  Question for jury.
In an action against a street railway for injuries to a passenger, where, under all the evidence, no reasonable difference of opinion can exist as to the negligent character of the acts of defendant's employees at a railroad crossing under the particular circumstances and at a particular time, the act was negligent in law, and there is no issue for the jury on the question of the negligence.  (*Post, p.* 471.)

Case cited and approved:   Traction Co. v. Carroll, 113 Tenn., 514.

7. CARRIERS.  Carriage of passengers.  Negligence.
Where a street railway's conductor in charge of a motor and trailer after walking upon straight railroad tracks gave the signal to the motorman to attempt the crossing, so that, though the motor got over the tracks, the trailer was struck by a train, the street railway was negligent, though the dust and noise of another train, which the motor had stopped to let go by, hindered the conductor's seeing and hearing the approaching train.  (*Post, pp.* 471-475.)

Case cited and approved:   Railroad v. Roe, 118 Tenn., 601.

8. **CARRIERS.** Carriage of passengers. Negligence.

The negligence of a railroad in running a freight over a street railway crossing did not excuse such street railway, whose conductor was negligent in not making sure of the approach of the freight before attempting to cross, from liability to an injured passenger, since the passenger's injuries were the proximate result of the conductor's failure to discharge his duty. (*Post, pp.* 475-477.)

Acts cited and construed: Acts 1871, ch. 46.

Cases cited and approved: Wallenburg v. Mo. Pac. R. Co., 86 Neb., 642; N. Y. & H. R. R. Co. v. Maidment, 168 Fed., 21; Brommer v. Penn. R. Co., 179 Fed., 577; Parker v. Des Moines City R. Co., 153 Iowa, 254; Vincennes Traction Co. v. Curry (Ind. App.), 109 N. E., 62.

---

**FROM SHELBY.**

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from The Supreme Court.—J. P. Young, Judge.

Roane Waring, for plaintiff.

R. H. Stickley, for defendant.

Mr. Justice Buchanan delivered the opinion of the Court.

The court of civil appeals affirmed a judgment rendered by the circuit court of Shelby county in favor of Cavell for the sum of $8,500, against the railway company, and the latter, by its petition for *certiorari,* seeks a review and reversal of the judgment of the court of civil appeals.

The point made by the assignment of error is that the court charged the doctrine of *res ipsa loquitur,* and that this doctrine can never apply where there is a collision between a vehicle belonging to the defendant and one belonging to some other party.

We will first consider the assignment upon the hypothesis that when the evidence was all in there was an open issue of fact on the question of defendant's negligence for the jury to determine.

The declaration was in one count and on the facts of the case, and showed the relation of passenger and carrier to have existed between plaintiff and the company when the injuries were inflicted for which he sued, and that the damages sought resulted from a breach by the carrier of the duty which the law imposed upon it when plaintiff was accepted as a passenger.

The declaration also averred divers particulars in which the servants of the company were negligent in the discharge of the duty so imposed. The company interposed its plea of the general issue.

The degree of care imposed on the carrier by law and on grounds of sound public policy is the exercise of the "utmost diligence, skill, and foresight." *Ferry Companies* v. *White,* 99 Tenn. (15 Pickle), 256, 41 S. W., 583; *Railroad v. Flake,* 114 Tenn. (6 Cates), 671, 88 S. W., 326; *Railroad* v. *Kuhn,* 107 Tenn. (23 Pickle), 106, 64 S. W., 202.

The doctrine laid down by Sir James Mansfield as to the degree of care required in such cases is that the duty of the carrier is to provide for the safety of its

135 Tenn.—30

passengers "as far as human care and foresight will go." *Christie* v. *Griggs*, 2 Camp., 79. See, also, Hutchinson on Carriers (3d Ed.), vol. 2, section 896, and authorities cited at page 111 *et seq.* of 107 Tenn., 64 S. W., 202, in *Railroad* v. *Kuhn*, supra. The Supreme court of the United States, speaking through Justice Lamar, has said:

"Since the decision in *Stokes* v. *Saltonstall*, 38 U. S. (13 Pet.), 181, 10 L. Ed., 115, and *N. J. R. & Transp. Co.* v. *Pollard*, 89 U. S., 22 Wall., 341, 22 L. Ed., 877, it has been settled law in this court that the happening of an injurious accident is, in passenger cases, *prima facie* evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidably by human foresight." *Gleason* v. *Va. Midland Ry. Co.,* 140 U. S., 435, 11 Sup. Ct., 859, 35 L. Ed., 458.

But qualifying the doctrine of this case as to the burden of the evidence, see *Sweeney* v. *Erving*, 228 U. S., 233, 33 Sup. Ct., 416, 57 L. Ed., 815. As to the degree of care, see, also, *Inland & Seaboard Co.* v. *Tolson, Adm'r*, 139 U. S., 551, 11 Sup. Ct., 653, 35 L. Ed., 270. See, also, the authorities collated in a note accompanying *Chicago Union Traction Co.* v. *Mee,* 218 Ill., 9, 75 N. E., 800, 2 L. R. A. (N. S.), 725, 4 Ann. Cas., 7.

In general mere proof that an accident injurious to plaintiff has occurred does not justify a verdict or judgment imposing liability therefor upon the defendant.

The burden of proving negligence as the causal basis or origin of the injury as well as the burden of of proving the responsibility of the defendant for the negligence the law imposes on the plaintiff.

The maxim is *ei qui affirmat, non ei qui negat, incumbit probatio.* Not only so, but the law imposes on the plaintiff the burden of showing the two essential elements of liability above mentioned by a preponderance of the evidence, and another burden imposed on the plaintiff is that his proof must in substance correspond with the averments of his pleadings.

As a general rule, proof that an accident injurious to plaintiff has happened, without more, is not evidence of negligence, and of course until the existence of negligence is shown no one is responsible for the injury, and in such case it is the plaintiff's misfortune. But while the law imposes the burdens we have mentioned, "when a thing which has caused an injury is shown to be under the management of the party charged with negligence, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from the want of proper care." In the same case it is further said:

"If the act which caused the injury was shown by direct evidence, and all the circumstances of the accident were shown in the proof, and if the only reasonable explanation of the accident should give rise to an

inference of negligence, then the rule of *'res ipsa loqui-tur'* would apply; but there can be no foundation for the application of this maxim where both the act which caused the injury and the negligence of defendant in relation to the act must be inferred from the accident itself. You cannot well say that an act is negligent, unless you know what it is. It is said in one case that the maxim under consideration can have no application where the injured person and the alleged negligent person were both in the exercise of an equal right and were each chargeable with the same degree of care." *De Glopper* v. *Railway & Light Co.,* 123 Tenn. (15 Cates), 633.

Some of the English cases discussing the application of the doctrine are: *Per curiam,* 3 H. & C., 601; per Bovil, C. J., *Simpson* v. *Lond. Gen. Omnibus Co.,* L. R., 8 C. P., 390, 392; 42 L. J. C., p. 112; The Annot Lyle 11 P. D., 114; 55 L. J. Adm., 62; The Indus, 12 P. D., 46; 56 L. J. Adm., 88; *Carpus* v. *L., B. & S. C. R. Co.,* 5 Q. B., 747; *Skinner* v. *L. B. & S. C. R. Co.,* 5 Exch., 787; *Scott* v. *London Dock Co.,* 3 H. & C., 596; 34 L. J. Ex, 220; *Kearney* v. *L. B. & S. C. R. Co.,* L. R., 5 Q. B., 411, L. R., 6 Q. B., 759, 40 L. J. Q. B., 285; *Byrne* v. *Boadle,* 2 H. & C., 722. See, also, *Briggs* v. *Oliver,* 4 H. & C., 403; and per Lord Halsbury (1891), A. C. 335; Broom's Legal Maxims, pp. 253, 254.

"The accurate statement of the law is not that negligence is presumed, but that the circumstances amount to evidence from which it may be inferred by the jury. In cases where the duty is not absolute, like that of the

common carrier to exercise the highest care and skill in regard to the safety of a passenger who has committed himself to its charge, but arises in the ordinary course of business, it is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn.'' Cooley on Torts (3d Ed.) section 1424.

See, also, Hutchinson on Carriers (3d Ed.), vol. 2, section 923; (3d Ed.), vol. 3, section 1414.

On the same subject see *Brown* v. *Union P. R. Co.,* 81 Kan., 701, 106 Pac., 1001, 29 L. R. A. (N. S.), 808; *McGinn* v. *N. O. Ry. & Light Co.,* 118 La., 811, 43 South., 450, 13 L. R. A. (N. S.), 601, and note; *Southern P. C,* v. *Hogan,* 13 Ariz., 34, 108 Pac., 240, 29 L. R. A. (N. S.), 813; *Cleveland, Cincinnati Chicago & St. L. Ry. Co.* v. *Hadley,* 170 Ind., 204, 82 N. E., 1025, 84 N. E., 13, 16 L. R. A. (N. S..), 527, 16 Ann. Cas., 1; *Hughes* v. *Atlantic City & Shore Railroad Co.,* 85 N. J. Law, 212, 89 Atl., 769, L. R. A., 1916A, 927; *Sweeney* v. *Erving,* 228 U. S., 233, 33 Sup. Ct., 416, 57 L. Ed., 815, Ann. Cas., 1914D, 905. In this the last-named case Mr. Justice Pitney discussed the doctrine of *Stokes* v. *Saltonstall,* 13 Pet., 181, 10 L. Ed., 115, cited supra, and said:

"Reading of the report shows that the case turns upon the high degree of care owing by carrier to passenger, and that the court did not rule that the circumstances of the occurrence shifted the burden of proof upon the main issue. Such is the effect that has uniformly been given to the decision."

After citing authorities to sustain the above quotation he concludes:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forstall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well-considered judicial opinions."

What we have said would be a good answer to the first assignment on the hypothesis first mentioned, but we think a correct view of all the evidence is that there was no material issue of fact for the jury to determine on the question of the negligence of the defendant, and therefore if the court erred in charging the doctrine *res ipsa loquitur,* it was innocuous error, for error

which does not injure the complaining party is not reversible. *Lowry* v. *Railroad,* 117 Tenn. (9 Cates), 507, 101 S. W., 1157.

If, upon all the evidence, no reasonable difference of opinion can exist among men as to the negligent character of the act of defendant's employees in carrying the street car on the crossing under the circumstances and at the time then that act was negligent in law, and there was no issue for the jury on the question of negligence. *Traction Co.,* v. *Carroll,* 113 Tenn. (5 Cates), 514, 82 S. W., 313.

Passing now to a consideration of the evidence in order to determine if the act was negligent in law— when the street car, on which plaintiff was a passenger and had paid his fare, was on its way from Memphis to Raleigh and had reached the intersection where its track running east and west crossed double tracks of the railroad company running north and south at Binghampton, a freight train composed of fifty-two cars running south at a high rate of speed on the west track was about to pass over the crossing. When the street car reached this crossing it was about six thirty p. m. on September 17, 1914. The street car train was composed of a motor car and a trailer. On the motor car were a conductor and a motorman, and on the trailer there was an additional conductor. The motor car and the trailer were each equipped with gates or doors worked by levers managed by the employees in charge, and through these doors passengers boarded and were discharged from the cars. The windows in

the cars were lowered, and the operatives in charge had a clear view of the railroad tracks both north and south of the crossing. These railroad tracks for a mile north and a mile south of this crossing were straight, and the view from the crossing in either direction was wholly unobstructed, if the persons in charge of the operation of the street car had not left their respective places therein, but had been in the exercise of even ordinary care. It is clear that they need not have attempted to cross on this particular occasion until it was safe so to do. It was, however, the duty of the conductor to precede the motor car upon the crossing, and after satisfying himself by looking north and south along the railroad tracks that the crossing was safe, to signal the motorman to come over. This duty it appears was required of him by the company, and by making this requirement we think the company was only in the exercise of the high degree of care which the law imposed upon it. The conductor who undertook to discharge this duty on this occasion had been running on that line for about a year. He was familiar with this crossing, and used it as many as eight times every day. The conductor on the trailer and the motorman were each likewise familiar with the crossing. The motor car reached a point on its track about fifteen feet west of the western railway track, and stopped to allow the south-bound train to pass on the western track. After that train had passed the conductor, while the motor car was still at rest, walked across the west railroad track, then across the

east railroad track.   He then signaled the motorman
to come over, and the latter obeyed.   The motor car
had passed over both railroad tracks and the trailer
was crossing the east railroad track when it was struck
about midships by a north-bound freight engine, haul-
ing a train of about ninety cars on the east railway
track.   This railway train was running at a rate of
speed variously estimated at from eighteen to thirty
miles an hour.   The result of the collision was an ap-
palling wreck.   Nine passengers on   the   street   car
train were killed, and many severely injured, includ-
ing the plaintiff.   The trailer car was derailed, and
overturned, and the freight engine, after having run
about two hundred and fourteen feet north of the cross-
ing, was derailed and ditched.

It is true that the operatives of the street car did
not control the operation of the north-bound railway
train, but it was their duty to exercise the utmost care,
skill, and foresight in the operation of the street car
train and theirs was the sole right and duty to so
control the operation of that train that it would not
attempt to occupy the crossing except when it was safe
so to do.   The operatives of the street car had the
right of selection as to the time when the street car
would attempt to make the crossing.   There was no
exigency requiring them to attempt a crossing when it
was unsafe.   There was no *vis major* on the street ca-
pable of compelling them to attempt an unsafe crossing,
or threatening the safety of their passengers in the
event of failure to make such an attempt at the particu-

lar time. The fear that the street car train might not reach its destination according to schedule did not justify crossing at the time it was attempted. The existence of the intersection of the railway tracks was an admonition of danger; a warning that either a north or south bound train might be expected to use the crossing at any time.

It is no exculpation to say that the smoke and dust which followed in the wake of the south-bound train so obscured the north-bound freight that it could not be seen by the conductor. Such a condition of the atmosphere called for additional caution on his part; he should have withheld his signal to the motorman until he had sufficient evidence that the crossing was safe. In a case where a plaintiff was seeking damages for injuries received while he was driving on the track of a street railway in Memphis, at night, when darkness and dust made it impossible for him to see or be seen at a greater distance than thirty or forty feet, and his injuries resulted from a collision with a street car moving toward him at thirty miles an hour, it was held that he could not recover, because of his lack of ordinary care. *Railroad* v. *Roe,* 118 Tenn. (10 Cates), 601, 102 S. W., 343.

Nor is it a sufficient answer to say that the conductor could not hear the noise of the approach of the north-bound freight because of its commingling with noise from the south-bound freight. He knew the south-bound freight had just passed; he saw and heard it pass; he was bound to take notice of the danger that it might as

it did pass a north-bound freight only a few hundred feet south of the crossing, and that he would be unable to distinguish the noise of one from that of the other. If he had waited only a very short time he could not have failed to make the distinction and to hear the roar from the north-bound freight as it bore down upon the crossing. Whether a bell was rung, or a whistle blown, or not, common knowledge and the least bit of common sense, aside from special training and observation, should have suggested to him that he withhold his signal until he could determine by hearing, if not by sight, whether the crossing could be made in safety.

The considerations mentioned irretrievably stamp negligence upon the conduct of this servant of the company. The facts to which we have referred are not in dispute upon them alone. A directed verdict for liability in some amount was maintainable. When all the evidence was in there was indeed no question for the jury on the question of negligence. The only matter which should have been submitted to the jury was the amount of damages to which plaintiff was entitled.

Whatever may be said of the charge, it was more favorable to defendant than it might have been if the trial court *mero motu* or on motion of plaintiff had directed a verdict in his favor, and submitted the cause to the jury only on the amount of the damages.

Whether the railroad company was or was not in any manner negligent in the operation of the colliding north-bound train we do not consider material. However great its negligence may have been, no harm would

have come to plaintiff if defendant's conductor had kept the stret car clear of the sweep of the railway train. Plaintiff's injuries were the direct and proximate result of the failure of the conductor to discharge his duty. It was a breach of the high degree of care required of defendant for its servants to enter on the crossing; if, at the time, their view of the railroad track north or south were in any manner obstructed by the recent passage of the south-bound train, they should have waited until such obstructions were removed. Indeed it was a lack of ordinary care not so to do. *Wallenburg* v. *Missouri P. R. Co.,* 86 Neb., 642, 126 N. W., 289, 37 L. R. A. (N. S.), 135, and cases cited in note, subdivisions B and C. See, also, *New York & H. R. R. Co.* v. *Maidment,* 168 Fed., 21, 93 C. C. A., 413, 21 L. R. A. (N. S.), 794, and *Brommer* v. *Penn. R. Co.,* 179 Fed., 577, 103 C. C. A., 135, 29 L. R. A. (N. S.), 924.

The first assignment of error is overruled.

The second, third, fourth and fifth assignments of error each rest on the predicate that the court erred in declining a special instruction. The questions made by them are that the conductor of the street railway train had the right to assume that those in charge of any approaching railway train would exercise reasonable care, etc., and that the railroad locomotive would he equipped with a proper headlight that could be seen, etc., and would sound a warning, and that under chapter 46, Acts 1871, it was the duty of those in charge of the north-bound train to stop the same before crossing the track of the Memphis Street Railway Company.

To sustain any one of the foregoing assignments of error would be to unsay all we said in our discussion of the first assignment.   Whether a passenger on becoming such contracts for it or not by express terms the law by implication and on grounds of public‑ policy burdens a carrier of passengers with the high  degree of care we have mentioned, supra, and it does not allow that the carrier may escape the burden by shifting it to other shoulders than his own.   Whether those in charge of the north-bound freight were negligent or not the street car company is not relieved of liability to the passenger for damages caused by the negligent management of its train.   See *Parker* v. *Des Moines City R. Co.*, 153 Iowa, 254, 133 N. W., 373, Ann. Cas., 1913E, 174, and cases cited in note; *Vincennes Traction Co.* v. *Curry* (Ind. App.), 109, N. E., 62, 9 Neg. and Com. Cas., 933, and note.

The only remaining assignment is that the amount allowed by the verdict as damages was so grossly excessive as to evince passion, prejudice, or caprice on the part of the jury.   We have examined the evidence on this point, and in our opinion the assignment is without merit.

We find no error in the judgment of the court of civil appeals.

Special Judges GHOLSON and SWIGGART took no part in the decision of this cause.

Judgment affirmed at petitioner's cost.