BETTY HEWITT, A MINOR, BY HER NEXT FRIEND, MARY HEWITT, PLAINTIFF, v. ATLANTIC CITY AND SHORE RAILROAD COMPANY, DEFENDANT.

Decided August 11, 1941.

For the plaintiff, *David S. Harrison* and *Gaskill & Rosenberg* (*John B. Baratta,* of counsel).

For the defendant, *George A. Bourgeois.*

JAYNE, C. C. J.   At midnight on July 22d, 1935, at Virginia avenue and the Boardwalk at Atlantic City, the plaintiff became a passenger in an electric street car operated by the defendant.   Her intended destination was Pleasantville. When the car in the course of the journey approached New York avenue a glow of artificial light suddenly and momentarily radiated brightly throughout the car.   It seemed to originate in the rear vestibule of the car.   Smoke immediately entered the car accompanied by an odor of burning rubber. The passengers, including the plaintiff, became instantly frightened and in an impulsive effort to escape from an apprehended danger, they or many of them hastened toward

the front door of the car. In this catastrophe, the plaintiff suffered bodily injury, hence the prosecution of this action.

The trial resulted in a verdict in favor of the plaintiff with an award of $4,700 damages. The defendant has a rule to show cause why this verdict should not be annulled and a new trial allowed.

It is asserted that the verdict confirming the alleged liability of the defendant is discordant with the clear weight of the evidence. The plaintiff introduced proof establishing the facts to which reference has already been made, supplemented by the opinion of an electrician that the event had the normal characteristics of an arc of electricity due to faulty or defective insulation of energized wires at the rear of the car. Prophylactic obligations can not be lightly regarded by common carriers of passengers. Nevertheless no affirmative evidence was produced by the defendant to explain the cause and nature of this misadventure or to prove that any care whatever had been exercised to prevent its occurrence.

The settled rule is that when a passenger shows that he was injured through some defect in the appliances of the carrier, or through some act or omission of the carrier's servant which might have been prevented by due care, then the jury have the right to infer negligence, unless the carrier proves that due care was exercised. *Whalen* v. *Consolidated Traction Co.,* 61 *N. J. L.* 606; 40 *Atl. Rep.* 645; *Dusenbury* v. *North Hudson County Railway Co.,* 66 *N. J. L.* 44; 48 *Atl. Rep.* 520; *Mettler* v. *Delaware, Lackawanna and Western Railroad Co.,* 77 *N. J. L.* 97; 71 *Atl. Rep.* 111; *Hughes* v. *Atlantic City, &c., Railroad Co.,* 85 *N. J. L.* 212; 89 *Atl. Rep.* 769; *Russell* v. *Public Service Railway Co.,* 104 *N. J. L.* 34; 139 *Atl. Rep.* 322; *Barney* v. *Hudson and Manhattan Railroad Co.,* 105 *N. J. L.* 274; 145 *Atl. Rep.* 5; *Rogers* v. *New York Central Railroad Co.,* 106 *N. J. L.* 394; 150 *Atl. Rep.* 357. The application of this rule to the state of the evidence in the present case justifies the inference of negligence which was evidently drawn by the jury. At the close of the trial there remained a justifiable inference of negligence with no evidence whatever to overthrow it.

An additional reason proposed by the defendant is that the

award of damages is exorbitant. This ground primarily implicates the divergent and contradictory evidence relating to the pathological condition with which the plaintiff is afflicted and its cause.

It may be reasonably assumed that the jury concluded from the evidence that in the consternation prevailing among the passengers upon the occurrence of the mishap, the plaintiff was propelled forward and her lower abdomen was forcibly pressed against the upper corner of a seat of the car. The plaintiff, then a girl of thirteen years of age, was menstruating at the time of this accident, having had her first menstrual period when she was eleven. Prior to the accident her menstrual periods had been regular and otherwise natural. Ever since the accident such periods have been irregular. Menstruation has been more profuse, exceedingly painful and accompanied by chills. Painful menstruation is known as dysmenorrhea.

The plaintiff consulted several physicians whose treatment did not afford her any appreciable relief and in May, 1940, she sought the services of Dr. William J. Carrington under whose observation and medical care she has remained during the entire year immediately preceding the trial of this case.

The jury, however, did encounter a most perplexing question concerning which the expert witnesses were not in accord. Dr. Carrington testified that after a very deliberate study of the symptomatology and as a result of physical examinations and approved scientific tests, he confidently reached the conclusion that the plaintiff is suffering from endometriosis caused by the accident.

Endometriosis is a condition characterized by the presence, outside the endometrial cavity, of endometrial tissue which is indistinguishable both pathologically and physiologically from normal endometrium. The endometrium from the womb becomes implanted in abnormal situations in the pelvic cavity. It seems to be acknowledged that the significant symptoms of endometriosis are pelvic pains associated with the menstrual period, severe acquired dysmenorrhea, nodules in the cul-de-sac, diminished mobility of the uterus, retroversion and the incidence of associated pelvic lesions.

Dr. Carrington disclosed with particularity the various recognized diagnostic measures he pursued to ascertain the true cause of the persistent dysmenorrhea. Remedies administered for dysmenorrhea were ineffectual. He then suspected the cause to be endometriosis. He testified that by palpation by rectum, he discovered a first degree retroversion of the uterus and that the ligaments holding the back portion of the uterus were nodular. His testimony was made more intelligible to the jury by his use of illustrative drawings. Moreover Dr. Carrington is a very highly regarded citizen; a perspicacious and learned physician who has practiced his profession for more than thirty years and in recent years, he has specialized in gynecology. His opinion undoubtedly inspired the respect of the jury.

In disaccord with the diagnosis of Dr. Carrington were Dr. Clifford B. Lull, a gynecologist, Dr. Charles T. Russell, assistant surgeon of the Department of Public Safety, both of Philadelphia, Dr. David B. Allman, a prominent surgeon and Dr. Bernard Crane, an obstetrician, the latter two of Atlantic City. These capable and experienced physicians had not attended the plaintiff professionally and were called by the defendant as expert witnesses. Dr. Lull and Dr. Allman had examined the plaintiff on one occasion and Dr. Crane on two occasions. Dr. Russell had not examined her. Those who had examined the plaintiff declared that they had not discovered by palpation the existence of the nodules to which Dr. Carrington referred. They stated that upon pressure there was evidence of tenderness in the region of the appendix and that in their opinion the dysmenorrhea was caused by a diseased appendix. They were not asked, however, to elucidate the causative relationship between a diseased appendix and a consequential dysmenorrhea. Informed of the diagnosis favored by the defendant's experts, Dr. Carrington returned to testify in rebuttal that to definitely ascertain the condition of the plaintiff's appendix he had with her consent subjected her to every test of authoritative recognition known to him, such as the Bastedo, the Chase, the Shilling tests, blood sedimentation count, a differential blood count, an X-ray of the appendix, all of which were negative. Moreover

the doctors called by the defendant informed the jury that the vast majority of cases of endometriosis occur in the latter part of the third or early part of the fourth decades of life and that the pertinent authorities fail to reveal the report of a single case of endometriosis occasioned by trauma. In turn, it is claimed that the plaintiff probably would not be afflicted with endometriosis at her age from the usual causes, hence trauma was in the present case the competent and producing cause. Additionally it was pointed out that the uterus suspended in the pelvic cavity occupies a fortunate location against external force. Accordingly, whether the situation of the plaintiff in the accident proximately originated the endometriosis became a controversial question for the solution of the jury.

On that branch of the case, Dr. Carrington emphasized the fact that the plaintiff was menstruating at the time of the mishap and he proposed that an increased pressure on the uterus in the pelvis had forcibly expelled some endometrium from the endometrial channel upward through the Fallopian tube into the pelvic cavity. Principles of the Science of Physics were then invoked to enjoin the acceptance of such a supposition. It was asserted that any such increased pressure would be equally distributed over the surfaces of every organ or part suspended in the pelvic cavity and that assuredly the endometrium residing in the uterus would not be ejected upward rather than downward.

Now, this abridged recitation of the evidence serves to divulge the character and complexity of the problems submitted to the jury for determination. The subjects were beyond the field of common knowledge and experience. It will perhaps be acknowledged that endometriosis is to many physicians and surgeons an unfamiliar lesion and although it is now generally agreed that the transplants come originally from the endometrial cavity, yet the mode of transmission in all cases is far from established. Perhaps demonstrable evidence of endometriosis is only attainable by some clinical surgical exploration.

Therefore in determining these issues, the jurors were obliged to harvest their conclusions from the testimony of the

expert witnesses. It was, of course, appropriately the task of the jury to select from all of such testimony that which they deemed to be rational, plausible in view of the surrounding factual circumstances and worthy of their faith and belief. The power to nullify the verdict of a jury is essentially remedial in character. Its exercise is not to supplant the function of the jury. *Bowen* v. *Healy's, Inc.,* 16 *N. J. Mis. R.* 113, 115. In the final analysis the power invoked should be exercised reasonably and cautiously to promote the ends of justice in the individual case.

In the present case, the jury may have determined the facts to be in conformity with the opinion of Dr. Carrington. The circumstances that he is an experienced gynecologist who was afforded an opportunity to make an elaborate study of the condition of the plaintiff may have been an influential factor in elevating the weight of his opinion. The more comprehensive and inclusory tests of Dr. Carrington to ascertain the state of the plaintiff's appendix may have added preponderant weight to his conclusion in that particular. He exhibited the links in his chain of reasoning. It can not be inferred that it required the force of sympathy, passion or prejudice to induce the jury to adopt his conclusions.

The verdict may be otherwise reconciled with the existing proof. Juries sometimes seem to discard fine spun technical and scientific hypotheses and attributions that are too lofty for their reach and by the application of common sense to the factual circumstances within the range of their understanding, arrive at a verdict. The jury may have concluded that through the negligence of the defendant this plaintiff truly sustained some bodily injury, whatever it may be, which, ever since the occurrence of the accident, has caused her to suffer severe pain at each menstrual period and that such suffering will, in view of the time that has already elapsed, continue for some indefinite span in the future. Expenses, both past and prospective, were undoubtedly considered. The jury resolved to award her $4,700.

If the plaintiff is in fact seized with endometriosis as a proximate result of this accident, then the award is exceedingly moderate. The plaintiff is a virgin, now only nineteen

years of age, and the most assured relief of the symptoms of endometriosis is operative castration. More conservative treatment has been largely speculative and of uncertain relief. In any event the award is not so manifestly excessive as to justify the inference that the jury in deciding the sharply controversial issues of this case were actuated by sympathy, passion or prejudice.

The rule is discharged.