MINROSE HAT CO., Inc., a corporation of the State of New York, Plaintiff,

v.

Edmond GABRIEL, trading as Gabriel Manufacturing Co., Wagner Plastic Corporation, a corporation of the State of New Jersey, and Frank Neglia, Defendants.

Civ. A. No. 559–55.

United States District Court D. New Jersey.

April 10, 1957.

Aaron A. Melniker, Albert Burstein, Jersey City, N. J., for plaintiff.

Simon J. Griffinger, Newark, N. J., for defendant Edmond Gabriel, etc.

David Lev, West New York, N. J., for defendant Wagner Plastic Corp.

Joseph Moritz, Jersey City, N. J., for defendant Frank Neglia.

MEANEY, District Judge.

The plaintiff herein, Minrose Hat Co., Inc., instituted suit against the defendants for damages which it alleged resulted from negligent construction of a certain mold to be used by contractors engaged by the plaintiff to manufacture plastic handbags, and by negligent handling of the mold during manufacture. A second count alleged wilful misrepresentation and fraud on the part of the defendant Gabriel. During the trial plaintiff consented to a dismissal of the second count and also to dismissal of the first count in so far as it affected the defendants Wagner Plastic Corporation and Frank Neglia. Trial proceeded as against Gabriel only.

The sole question to be determined at the trial, before the element of damages could be considered, was whether or not Gabriel had been negligent in the construction of the mold to be used by the plaintiff's contractors. Evidence was adduced by the plaintiff to indicate that when the Wagner Plastic Corporation operated the machine into which the mold had been incorporated, a defect in the nature of a crack was discovered in the male portion of the mold, so that it was not possible to produce satisfactory plastic parts for a marketable handbag such as the plaintiff intended to sell. Further evidence by plaintiff was introduced to show that after the mold was made by defendant Gabriel, a test run was made at the defendant Gabriel's plant in the presence of the plaintiff, Wagner and others, during which a half dozen or more plastic parts were produced with no defects. This test was made using a machine in which no water was used to cool the parts of the mold during operation. Thereafter the mold was delivered to Wagner for the Wagner Plastic Corporation and transported in a station wagon from the Gabriel plant in Haverstraw, N. Y., to the Wagner plant in Jersey City. At this latter plant the mold was set up in an appropriate machine and, in the course of tests made by Wagner, faulty parts were run off, which resulted in the disclosure of the existence of a crack in the mold. An expert witness for the plaintiff testified that a crack such as that which existed in the male part of the mold in question, produced in evidence at the trial, could not result from mishandling, dropping or rough usage of the mold, but was indicative of faulty manufacture of the mold or use of improper material in its construction.

The defendant Gabriel introduced testimony to show that the mold was manufactured from materials such as were used in accepted practice for the making of molds, and that even with the use of

the most widely accepted materials there was always a possibility of a latent defect. Further testimony indicated that for a period of months before the mold was turned over to Wagner, thousands of pieces were made by Gabriel to test the efficiency of the mold. There was testimony to the effect that use of the machine containing the mold, without the use of water for cooling, was common for a sample run, and that repeated operation of the machine without water would result in impossibility of production because of the viscous condition of the plastic in the machine due to heat; but that such use would not cause cracking of the mold. Gabriel testified that when he was notified by Wagner of the defective parts produced by use of the mold, he found sample parts at the Wagner plant, and that the earlier samples at the bottom of the pile showed no defect, while the effects of a crack in the male part of the mold appeared in those later made which were on top of the pile. He gave as his considered opinion a statement that these samples indicated that the injection of a superabundance of plastic material under heavy pressure into the mold resulted in a fracture of the mold when the parts were drawn one from the other under such abnormal conditions, requiring an extraordinary pull of the female part from the male part. The plaintiff introduced in rebuttal countervailing testimony that no such super injection was possible as the viscous plastic would leak from the mold, giving warning of a jam. The court opines that this testimony must be considered in addition to other matters, in the resolution of the question to which it would seem the issue is reduced. Basically the inquiry would seem to concern itself with the care, *vel non*, taken in the manufacture of the mold.

■■ Reference should be made to the problem of which law to apply to this basic issue. This court finds that under the rule of this circuit the courts must first look to the law of the forum and apply its conflicts of law rules. Tomao v. A. P. De Sanno & Son, 3 Cir., 209 F.2d 544. The New Jersey rule is *lex loci delicti*. Kieffer v. Blue Seal Chemical Co., 3 Cir., 196 F.2d 614, at page 615, and the New Jersey cases cited therein. The locus of wrong, if any wrong has been done, must be in New York where the mold was manufactured. Therefore, New York law must apply.

■ The application of the doctrine of *res ipsa loquitur* to the instant case would seem to be confined to the mere establishment of possible negligence on the part of the manufacturer which may be dispelled by explanation on his part, not necessarily amounting to exculpation. In New York the doctrine of *res ipsa loquitur* facilitates the burden of the plaintiff of proving a breach of the duty of due care. It does not, however, avoid the requirement that upon the whole case he must prove a breach by the preponderance of the evidence. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. Parenthetically, it may be said that the commendable trend toward protection of the general public by creating a "standard of liability that would make the manufacturer guarantee the *safety* [emphasis supplied] of his product even when where there is no negligence", Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436, 442, does not extend as yet to a manufacturer's product where there is no general use by the public and where, as here, there is no express warranty. In the case at bar plaintiff having shown the existence of the crack in the mold creates the inference of responsibility on the part of the manufacturer, aided by the *res ipsa* doctrine. But in such case "The most that is required of the defendant is explanation, not exculpation; and that explanation may leave the mind in equipoise, in which case the defendant would be entitled to a verdict because the plaintiff has failed to prove his case by the weight of the evidence." Hughes v. Atlantic City & Shore R. Co., 85 N.J.L. 212, 89 A. 769, 770, L.R.A. 1916A, 927. New York adheres to the same rule. George Foltis, Inc., v. City of New York, 287 N.Y. 108, 38 N.E.2d 455,

153 A.L.R. 1122; Manhat v. United States, 2 Cir., 220 F.2d 143, certiorari denied 349 U.S. 966, 75 S.Ct. 900, 99 L. Ed. 1288; Century Indemnity Co. v. Arnold, 2 Cir., 153 F.2d 531, certiorari denied 328 U.S. 854, 66 S.Ct. 1346, 90 L.Ed. 1626; Cole v. Swagler, 308 N.Y. 325, 125 N.E.2d 592. Defendant introduced expert testimony to the effect that he employed the materials recognized by the trade in the making of the mold. In addition he showed reliance on a recognized supplier of metals for making of molds.

■ If the mold were made in conformity with standard practice in the industry and consequent necessary examinations and tests were made resulting in discovery of no patent defects, then it would seem properly arguable that the defendant Gabriel was not negligent in the performance of his duty to the plaintiff, arising out of the contract for manufacture of the mold. See Dysko v. Mack International Motor Truck Corp., Sup., 142 N.Y.S.2d 699, at page 701, and cases cited therein, and Smith v. Peerless Glass Co., 259 N.Y. 292, 181 N.E. 576. The custom of the trade exacts the use of reasonable care. "Save for exceptional situations where courts are sure enough of their ground to overrule the customs of a calling, those customs measure the proper standard." Metropolitan Coal Co. v. Howard, 2 Cir., 155 F.2d 780, 784. There was a course of trial tests over a period of a year without consequent disclosure of any defect in the manufactured mold. Under the circumstances the defendant acted reasonably and in accordance with the customs and usages of his trade.

The court, therefore, makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Gabriel Manufacturing Company produced a mold for the making of plastic handbags under contract with Minrose Hat Co., Inc.

2. The mold was manufactured from such quality steel as is in accordance with the customs and usages of this trade.

3. The mold left the dominion and control of Gabriel in apparently good condition, having produced thousands of perfect plastic parts during tests run by Gabriel.

4. A crack was discovered in the mold after several successful samples were produced by Wagner Plastics Corporation.

5. The defect was not observable after a comprehensive series of tests at defendant Gabriel's plant, and when it left his control.

### Conclusions of Law

1. This court has jurisdiction of the subject matter and the parties involved.

2. Defendant Gabriel proved due care in the selection of materials for the manufacture of the mold.

3. Defendant Gabriel proved due care in the manufacturing, assembling, and inspection of the mold.

4. Defendant Gabriel proved due care in the performance of tests on the mold.

5. Plaintiff failed to exclude the existence of a probable cause of injury via faulty testing by Wagner or a pressure jam of the mold, though both causes were set forth as explanations of the injury by expert testimony.

6. Plaintiff failed to support his case with any proof of negligence save the existence of the injury and the control of the defendant Gabriel and the inference to be drawn therefrom.

7. Defendant Gabriel rebutted the inference of negligence by meeting the requirements of standards of due care.

8. Plaintiff failed to carry his burden of proving the negligence of the defendant Gabriel either directly or by inference.

9. Defendant Gabriel cannot be held liable to the plaintiff for the negligence charged by the plaintiff in his complaint.

Therefore, the court finds for the defendant Edmond Gabriel, trading as Gabriel Manufacturing Co.

Let an appropriate order be submitted.